1  MELINDA HAAG (CABN 132612)
   United States Attorney
2
   J. DOUGLAS WILSON (DCBN 412811)
3  Chief, Criminal Division

4  JOHN H. HEMANN (CABN 165823)
   RODNEY C. VILLAZOR (NYBN 4003596)
5  Assistant United States Attorneys

6       450 Golden Gate Avenue, Box 36055
        San Francisco, California 94102-3495
7       Telephone: (415) 436-7200
        rodney.villazor@usdoj.gov
8
   Attorneys for United States of America
9

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12               SAN FRANCISCO DIVISION

13
   UNITED STATES OF AMERICA,          )  Case No. CR 14-0102 CRB
14                                     )
            Plaintiff,                 )  GOVERNMENT'S OPPOSITION TO
15                                     )  DEFENDANT ROBLES' (DKT. 89) AND
         v.                            )  DEFENDANT VARGAS' (DKT. 94)
16                                     )  MOTIONS TO EXCLUDE AND DEFENDANT
   IAN FURMINGER, EDMOND ROBLES, and   )  VARGAS' MOTION TO SUPPRESS (DKT. 95)
17 REYNALDO VARGAS,                    )
                                       )  Date:  October 21, 2014
18          Defendants.                )
   _____)  Time:  2:30 pm
19
            The United States opposes defendants Edmond Robles and Reynaldo Vargas' separate motions
20
   to exclude certain evidence on grounds of relevancy, prejudice and propensity evidence under Federal
21
   Rules of Evidence (FRE) 402, 403 and 404 (Robles Mot., Dkt. 89 and Vargas Mot., Dkt. 94) and
22
   opposes Vargas' separate motion to suppress an Apple MacBook.  (Vargas Suppress, Dkt. 95).  As set
23
   forth below, defendants' motions should be denied.
24
   //
25
   //
26
   //
27

28 GOVT. OPP. TO MOTIONS TO EXCLUDE        1
   CR 14-0102 CRB

**<u>BACKGROUND</u>**

The Indictment alleges, in pertinent part, that defendants Ian Furminger, Robles and Vargas, as police officers of the San Francisco Police Department (SFPD), engaged in multiple criminal conspiracies:  to distribute controlled substances; to steal money and other valuable items that were seized on behalf of the City of San Francisco and to violate the civil rights of others.  Furminger is also charged with extortion under color of right.  The specific charges asserted are:

- Count 1: Drug conspiracy, 21 U.S.C. § 846

- Count 2: Drug distribution, 21 U.S.C. § 841(a)

- Count 3: Civil rights conspiracy, 18 U.S.C. § 241

- Count 4: Federal program theft conspiracy, 18 U.S.C. § 371

- Count 5: Federal program theft, 18 U.S.C. § 666(a)(1)(A)

- Count 6: Extortion, 18 U.S.C. § 1951.

Robles and Vargas seek to exclude evidence that is directly relevant to the aforementioned counts, primarily, their personal interactions with informants and victims who are expected to testify in the United States' case-in-chief.

First, Robles and Vargas seek to exclude the following evidence as under FRE 404(a):

- their theft of marijuana from a UPS store in September 2009 ("September 2009 UPS Marijuana");

- their respective interactions with S.S., an SFPD informant ("Informant S.S."); and

- Vargas' use and possession of two stolen Apple MacBooks.

However, the United States intends to offer much of this objected evidence in its case-in-chief as relevant, "inextricably intertwined" evidence, or under FRE 404(b) as set forth herein.

Second, under FRE 402 and 403, Robles and Vargas seek to exclude panoply of evidence:

- the arrest of Joseph Furlong on March 2, 2009 ("Joseph Furlong Arrest");

- the theft of marijuana from a UPS store in March 2009 ("March 2009 UPS Marijuana");

1    • a home invasion robbery of victims on North Beach ("North Beach Robbery");

2    • the theft of a laptop from the Amit Hotel ("Amit Hotel Laptop");

3    • the theft of an Apple MacBook from Scott Krasunik ("Krasunik MacBook");

4    • the theft of a Toshiba laptop from an apartment ("Toshiba Laptop Theft")

5    • their interactions with C.H., another SFPD informant ("Informant C.H.");  and

6    • the search and seizure of laptop containing child pornography.

7    Each of these pieces of evidence, however, is directly relevant to the drug distribution and federal

8    program theft conspiracies.  The March 2009 UPS Marijuana evidence is the substantive proof for Count

9    Two.  Additionally, neither Robles nor Vargas articulate any specific prejudicial grounds to justify

10   exclusion.

11         Separately, Vargas seeks to suppress the actual Apple Macbook that had been stolen on

12   November 28, 2009 and recovered from his mother's house on February 27, 2014.  Vargas, however,

13   has no standing, and his mother, the owner of the Apple MacBook, consented to the seizure.

14         Finally, Robles and Vargas seek to exclude, but the United States does not intend to introduce,

15   evidence of the following:

16   • specific admissions made by Vargas concerning Robles;

17   • an assault on Joseph Furlong after his arrest;

18   • a sexual relationship between Vargas and Kelsey Stewart, Joseph Furlong's then-girlfriend; and

19   • a theft of items from a victim living at a homeless shelter.

20         Collectively, their effort to exclude the aforementioned evidence is designed to divide the United

21   States' case-in-chief into an incoherent, unrelated series of events – the same object of their collective

22   motions to sever.  They should not be allowed to avoid such evidence of their past misconduct under the

23   guise of propensity, relevancy or prejudicial objections.  Their motions to exclude and to suppress

24   should be denied.

25   //

26   //

27

28   GOVT. OPP. TO MOTIONS TO EXCLUDE        3
     CR 14-0102 CRB

## **LEGAL STANDARDS**

### **A. Inextricably Intertwined Evidence is Not Subject to FRE 404(b)**

The Ninth Circuit has repeatedly held:

> [e]vidence should not be treated as 'other crimes' evidence when 'the
> evidence concerning the ['other'] act and the evidence concerning the crime
> charged are inextricably intertwined' [citations omitted].  In such cases, the
> policies supporting the exclusion of evidence under Rule 404(b) are inapplicable,
> since the evidence is not being presented to 'prove the character of a person in
> order to show action in conformity therewith.'  Fed. R. Evid. 404(b).
> Instead, the evidence is 'direct evidence,' used to flesh out the circumstances
> surrounding the crime with which the defendant has been charged, thereby
> allowing the jury to make sense of the testimony in its proper context.

*United States v. Ramirez-Jiminez*, 967 F.2d 1321, 1327 (9th Cir. 1992).  This is particularly true where the purported "other acts" are part of the same course of criminal conduct, only parts of which were charged as substantive counts of an indictment.  *See United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993) ("The policies underlying rule 404(b) are inapplicable when offenses committed as part of a single criminal episode become other acts simply because the defendant is indicted for less than all of his actions ") (internal quotations and citations omitted).  Uncharged conduct is admissible outside the strictures of Rule 404(b) where "(1) particular acts of the defendant are part of ... a single criminal transaction, or when (2) other act evidence ... is necessary [to admit] in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime."  *See United States v. Beckman*, 298 F.3d 788, 794 (9th Cir. 2002) (internal citations omitted).

In *Williams*, 989 F.2d at 1070, the Ninth Circuit held that uncharged cocaine transactions, which a witness testified occurred contemporaneously with the charged crimes of possession of distribution amounts of methamphetamine ["crank"] and marijuana, were not "other crimes" evidence under Rule 404(b) because "they were linked to and essentially part of the same conduct as the crank sales."  The "testimony regarding uncharged conduct was inextricable from and provided necessary context for [the witness'] testimony about the charged conduct.  Even if portions of [the] testimony could be categorized as other crimes evidence, the district court would not have abused its discretion in admitting it."  *Id*.

If the rules were otherwise, the government would be forced to bring indictments consisting of hundreds of counts for every continuing crime that was executed through multiple instances of particular conduct. Instead, the rules allow the government to charge a representative sample of particular illegal instances but to apprise the jury at trial of the entire background and scope of the criminal scheme. As the court held in *United States v. Gonzalez*, the "trial court may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment. Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed." 110 F.3d 936, 941 (2d Cir. 1997) (citations omitted).

Accordingly, "evidence of uncharged criminal activity is not considered 'other crimes' evidence under Fed.R.Evid. 404(b) if it 'arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial.'" *Id.* at 942 (citations omitted). Similarly, evidence of uncharged criminal activity is not considered "other crimes" evidence if it explains the defendant's intent or knowledge concerning the charged crimes. *See United States v. Kallin*, 50 F.3d 689, 696 (9th Cir. 1995) (evidence of the defendant's filing of false corporate tax returns not charged in the indictment properly admitted to show defendant's intent to file false personal tax returns as charged in the indictment).

Moreover, acts that occurred after the conspiracy has ended are admissible if they tend to prove any relevant fact, such as the structure, goals or existence of the conspiracy; the state of mind of the conspirators during the course of the conspiracy; or the responsibility or roles of the conspirators in the conspiracy. *See United States v. Corona*, 34 F.3d 876, 881 (9th Cir. 1994) ("Evidence of subsequent, as well as prior acts is admissible to show the defendant's state of mind."); *United States v. Ayers*, 924 F.2d 1468, 1473-74 (9th Cir. 1991) (acts subsequent to time period covered by alleged conspiracy were admissible to prove defendant's state of mind during the time of the conspiracy); *United States v. Wentz*, 456 F.2d 634, 637 (9th Cir. 1972) ("[E]vidence of acts of co-conspirators which occurred after the entire

conspiracy had ended and was complete may be introduced against all of the co-conspirators if the evidence tends to prove the existence of the conspiracy.").

## B. FRE 404(b) is a Rule of Inclusion

FRE 404 generally prohibits the use of other crimes, wrongs or acts to prove action in conformity therewith, but allows such evidence "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Fed. R. Evid. 404(b). Rule 404(b) does not require particularized notice; instead, the government need only "provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice for good cause shown, of the general nature of" the proposed evidence. Fed. R. Evid. 404(b) (emphasis added). It is well established that Rule 404(b) is a rule of inclusion. *United States v. Jackson*, 84 F.3d 1154, 1159 (9th Cir. 1996). "Unless the evidence of other crimes tends only to prove propensity, it is admissible." 84 F.3d at 1159. Thus, evidence of prior and subsequent acts is admissible "except where it tends to prove only criminal disposition." *United States v. Rocha*, 553 F.2d 615, 616 (9th Cir. 1977) (emphasis added).

Evidence is admissible under Rule 404(b) if four elements are satisfied: (1) it must be offered to prove a material element of the offense for which defendant is now charged; (2) if the prior conduct is offered to prove intent, it must be similar to the charged conduct; (3) sufficient evidence of the prior conduct; and (4) the prior conduct must not be too remote in time. *See United States v. Howell*, 231 F.3d 615, 628 (9th Cir. 2000); *see also Huddleston v. United States*, 485 U.S. 681, 685 (1988) (resolving conflict amongst circuits regarding proof of 404(b) act as "sufficient evidence to support a finding by the jury" for third factor); *United States v. Rubio-Villareal*, 927 F.2d 1495, 1503 n.8 (9th Cir. 1991) (acknowledging *Huddleston* modified "clear and convincing" standard). When these four elements are satisfied, the court then balances the probative value of the evidence against any prejudicial effect. *Howell*, 231 F.3d at 629.

//

//

## C. The Broad Principle of FRE 402 Relevance

FRE 402 states that "all relevant evidence is admissible" except as provided by the Constitution, statute or rule. Therefore, all evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," should be admitted, absent an objection based on a specific rule, statute or constitutional principle. See FRE 401; *see also Huddleston v. United States*, 485 U.S. 681, 687 (1988) ("Rules 401 and 402 establish the broad principle that relevant evidence - evidence that makes the existence of any fact at issue more or less probable - is admissible unless the Rules provide otherwise.").

## D. FRE 403 Precludes *Unfairly* Prejudicial Evidence

Evidence is admissible under Rule 403 where it is not unfairly prejudicial to the defendant. Unfair prejudice is evidence of a character that would prompt the jury to base its decisions on impermissible factors, such as shock or outrage at the defendants' conduct. *See Ramirez-Jiminez*, 967 F.2d at 1327 ("The unfair prejudice is measured by the extent to which the testimony 'makes conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged.'"), *quoting United States v. Bailleaux*, 685 F.2d 1105, 1111 (9th Cir. 1982). Evidence is not excludable under Rule 403 where it "is not the sort of conduct which would provoke a strong and unfairly prejudicial emotional response from the jury. Rather, it is prejudicial only to the extent that it tends to prove the fact justifying its admission." *Ramirez-Jiminez*, 967 F.2d at 1327.

## ARGUMENT

## A. The United States Does Not Intend to Offer Certain Contested Evidence.

As stated above, the United States does not intend to introduce some of the objected-to-evidence. First, it will not elicit testimony concerning Vargas' sexual relationship with Kelsey Stewart, Joseph Furlong's girlfriend at the time of his arrest. Robles Mot. at 8, Vargas Mot. at 8-9. Second, the United States will not elicit testimony that Robles and Vargas subsequently assaulted Joseph Furlong at the Mission Police Station. Robles Mot. at 4; Vargas Mot. at 9. Nor will the United States elicit the

objected-to-statement that Vargas made about Robles to Informant C.H. Robles Mot. at 13-14. Finally, the United States has opted to not introduce evidence of an SFPD theft at a San Francisco homeless shelter. Robles Mot. at 9. Accordingly, the Court should deny the motions to exclude as moot.

**B. Defendants Cannot Exclude Inextricably Intertwined Evidence under FRE 404(b).**

FRE 404(b) has no application when the evidence is inextricably intertwined with the evidence of the crimes charged. *Ramirez-Jiminez*, 967 F.2d at 1327. The following evidence is simply uncharged criminal conduct that is properly admissible and necessary to present to the jury coherent and comprehensible conspiracies to distribute controlled substances and to commit federal program theft, each from February 19, 2009 through April 9, 2011. Alternatively, the evidence is admissible under a permissible purpose of FRE 404(b), and any admitted FRE 404(b) evidence should be given with accompanying limiting jury instructions to mitigate prejudice. *See, e.g., United States v. Hinton*, 31 F.3d 817, 822 (9th Cir. 1994) (upholding district court's admission of 404(b) evidence coupled with limiting instructions). Applying these avenues of admissibility, the Court should disregard defendants' myopic focus on any purported lack of corroboration.[1]

1. September 2009 UPS Marijuana

There are two instances of marijuana theft after SFPD seized the contraband from UPS – the March 2009 UPS Marijuana and the September 2009 UPS Marijuana. On March 25, 2009, Furminger, Robles and Vargas seized marijuana from a UPS store in San Francisco, logged some contraband into SFPD evidence, sent a portion of it along to a detective at the Barrington, Illinois police department and kept the rest for distribution through, D.B. and J.W., two SFPD informants ("Informant D.B." and "Informant J.W."). Separately, on September 14, 2009, Robles and Vargas seized marijuana from a UPS store in San Francisco. They again did not log all the marijuana into SFPD evidence, giving rise to

---

[1] Robles and Vargas' motions are replete with claims of lack of corroboration that they claim somehow serve as suitable grounds to exclude evidence. Corroboration, however, is not the standard under FRE 404(b). The jury must "reasonably conclude that the act occurred and that the defendant was the actor." *United States v. Hadley*, 918 F.2d 848, 851 (9th Cir. 1990). This is a "low threshold" requirement. *United States v. Hinton*, 31 F.3d 817, 822-23 (9th Cir. 1994) (admitting previous assaults under FRE 404(b) as *modus operandi*).

the strong inference that they pilfered some of the marijuana for additional drug distribution.

Robles and Vargas seek to exclude evidence of the September 2009 UPS marijuana. Robles Mot. at 12, Vargas Mot. at 3-5. Both these instances – the March 2009 UPS Marijuana and the September 2009 UPS Marijuana – are evidence relevant to proving the drug conspiracy and federal program theft charges. Indeed, the September 2009 evidence cannot be anything less than inextricably intertwined with the March 2009 UPS marijuana evidence. The only difference is that the United States chose to charge the March 2009 offense conduct as a substantive count and to keep the September 2009 offense conduct as one part of the drug conspiracy. Therefore, it is relevant and should not be subject to FRE 404(b).

Even if the September 2009 UPS Marijuana evidence was subject to FRE 404(b), it is plainly relevant for intent and opportunity. *See, e.g., United States v. Lozano*, 623 F.3d 1055, 1059-60 (9th Cir. 2010) (finding evidence of prior possession of narcotics properly admitted as 404(b) evidence for knowledge and intent). First, this evidence shows that Robles and Vargas intended to participate in the both the drug conspiracy and the federal program theft conspiracy by stealing narcotics that was otherwise seized for the City and County of San Francisco. Additionally, the evidence is relevant for opportunity. In both instances, Robles and Vargas, as the responding police officers seizing the marijuana from UPS, had almost exclusive knowledge of the actual weight of the seized contraband.[2] That gave them two separate opportunities – in March 2009 and in September 2009 – to siphon off part of the marijuana in furtherance of the drug conspiracy and to save enough contraband to log into SFPD evidence to avoid suspicion. This meets the materiality and similarity requirements. For sufficiency, the United States anticipates eliciting testimony from the person who attempted to send the marijuana through UPS as well as the UPS employee who flagged the package as suspicious. Finally, there is only a six-month lapse between the March 2009 UPS Marijuana incident and the September 2009 UPS

---

[2] According to UPS, a UPS customer service representative will "upweigh" a package and round to the higher pound. For example, the UPS records show that the marijuana package seized by Defendants in March 2009 weighed (4) pounds. Thus, the lightest the package could have weighed was 3.1 pounds and the heaviest would be 4 pounds.

1  Marijuana caper.  Contrary to Robles and Vargas' position, the fact that the September 2009 UPS

2  Marijuana post-dates the March 2009 UPS marijuana evidence is not dispositive.  *Rocha*, 553 F.2d at

3  616 (noting subsequent acts can be admissible under 404(b)).  Moreover, if defendants put on evidence

4  of their two proffered defenses, namely, that no marijuana is missing or that they used the marijuana for

5  a legitimate lawful purpose, the justification to admit the September 2009 marijuana as 404(b) evidence

6  for motive and opportunity becomes all the more stronger.

7          2.  <u>Interactions with Informant S.S.</u>

8          Informant S.S., a fence for stolen property, is an SFPD informant from whom Furminger

9  extorted things of value under color of law.  Informant S.S. initially signed on as an informant with

10  Robles and Vargas.  He later provided Robles with sunglasses and a computer and sold stolen

11  electronics for Vargas.  Both seek to exclude this evidence as propensity evidence and on relevancy

12  grounds.  Robles Mot. at 13; Vargas Mot. at 10-11.  Defendants, however, overlook the point that this

13  evidence too is inextricably intertwined with the conspiracy to commit federal program theft and will

14  also provide the jury with necessary background and scale of the conspiracy and the extortion charge

15  against Furminger.

16          In other words, Robles and Vargas cannot simply dodge evidence of their illicit actions with

17  Informant S.S. using the Furminger extortion count as a shield against relevance.  Informant S.S. was,

18  after all, *their* informant during much of the charged conduct in 2010, Furminger was *their* supervisor at

19  Mission Station, and Furminger has been and remains a close friend of Robles.  As documented in an

20  SFPD memorandum dated January 21, 2010, Robles wrote the informant initiation of Informant S.S.  In

21  another SFPD memorandum dated March 9, 2011, Vargas formally requested continuing his

22  "relationship" with Informant S.S.  Informant S.S. eventually became their trusted informant and helped

23  enable the federal program theft conspiracy.  That they were not charged with Furminger's extortion

24  does not make this evidence irrelevant.  As stated before, the uncharged criminal conduct by Robles and

25  Vargas nevertheless provides the necessary context in which the federal program theft conspiracy

26  operated.  Additionally, it tells the whole story leading to the extortion charge against Furminger.  To

27

28

excise evidence of their respective interactions with Informant S.S. would give the jury the misleading impressions: that they would steal from arrestees but have no means to sell the contraband and that Furminger randomly approached Informant S.S. and just started to extort him. This objected-to-evidence paints the full picture.

Secondarily, the evidence related to Informant S.S. would be admissible as 404(b) evidence to show defendants' scheme. The case-in-chief evidence relevant to the conspiracy to commit federal program theft is tied to evidence related to Informant S.S. because, as a fence for stolen goods, Robles and Vargas needed an instrument to dispose of stolen property. This goes to the material element of intent, and there are strong similarities between evidence of federal program theft and evidence of dealing with a fence. The anticipated testimony of Informant S.S., coupled with corroboration from Informant C.H., whom was first signed as an informant by Robles, concerning their unlawful conduct in 2010 and 2011, meet the sufficiency and remoteness factors.

### 3. Vargas' Use and Possession of Stolen Apple MacBooks

Finally, Vargas seeks to exclude evidence of his use and possession of two stolen Apple MacBooks. Vargas Mot. at 5-8. In its case-in-chief, the United States intends to introduce evidence that, on February 20, 2010, Vargas stole an Apple MacBook from Scott Krasunik ("the Krasunik MacBook") during the execution of a search warrant in San Francisco. Apple records show that Vargas registered the Krasunik MacBook on June 18, 2011.

Under FRE 404(b), the United States plans to introduce evidence that Vargas used and possessed two other stolen Apple MacBooks to prove intent to specifically steal Apple MacBooks. On March 11, 2009 and on November 28, 2009, two Apple MacBooks were respectively stolen from parked cars in San Francisco. Using unique equipment identifiers, such as serial numbers and Global Unique Identifier (GUID) maintained by Apple, the United States will introduce evidence that the victims used and possessed the MacBooks prior to the car thefts and that Vargas possessed these same two MacBooks after the car thefts. In addition, federal agents secured the actual MacBook stolen on November 28, 2009 at the home of Vargas' mother on February 27, 2014 that is subject to Vargas' motion to suppress.

This 404(b) evidence squarely fits within the FRE 404(b) criteria. The evidence of the two prior stolen MacBooks are designed to show Vargas not only had the intent to steal computers seized on behalf of the City and County of San Francisco as charged in the federal program theft conspiracy, but that he had the specific intent to use and possess stolen Apple MacBooks. Proof of these two car thefts and Vargas' use and possession is considerable. The victims are expected to testify that their Apple MacBooks were stolen from their cars in San Francisco. Apple records, along with the recovery of one of the laptops from Vargas' own mother, will establish that Vargas used and possessed these laptops. Remoteness is not an issue either. The MacBook stolen in March 11, 2009 was registered to Apple by Vargas, less than two months later, on April 27, 2009. The MacBook stolen on November 28, 2009 was likewise registered to Apple by Vargas, about two months later, on January 29, 2010. The Court should deny Vargas' motion to exclude evidence pertaining to these two stolen Apple Macbooks.

**C. The Remaining Objected-to Evidence is Relevant and Not Unfairly Prejudicial**

Defendants' shotgun objections of relevancy and prejudicial objections to the remaining evidence are without merit. They conflate the weight of the evidence and the credibility of witnesses with objections for relevance and prejudice. Robles and Vargas also fail to account for the *Pinkerton* doctrine that a co-conspirator is vicariously liable for the actions of other co-conspirators provided that the prosecution proves: (1) the substantive offense was committed in furtherance of the conspiracy; (2) the offense fell within the scope of the unlawful project; and (3) the offense could reasonably have been foreseen as a necessary or natural consequence of the unlawful agreement." *United States v. Fonseca-Caro*, 114 F.3d 906, 907-08 (9th Cir. 1997). Moreover, a *Pinkerton* jury instruction, modeled after the Ninth Circuit Model Criminal Jury Instruction 8.25, will provide the necessary constitutional safeguards for each defendant. *See United States v. Gadson*, 763 F.3d 1189, 1215 (9th Cir. 2014) (upholding challenged *Pinkerton* jury instruction as "accurate statement of applicable law") (citations omitted).

For the sake of brevity and clarity, the objected-to-evidence can best be grouped into four areas:

• the aforementioned evidence that is inextricably intertwined or admissible under FRE 404(b)

discussed *supra*;

- evidence relevant to charged offenses involving both Robles and Vargas, namely (i) the Joseph Furlong Arrest; (ii) the March 2009 UPS Marijuana evidence; (iii) the North Beach Robbery; and (iv) payment of a drug debt of Informant C.H.;

- evidence relevant to charged offenses involving Vargas and others, namely (i) the theft of the Krasunik Macbook; (ii) illegal payments and drugs given to Informant C.H.; (iii) the theft of a Toshiba laptop; (iv) the search and seizure of a laptop containing child pornography; and (v) Furminger's threats to D.B. and J.W., two SFPD informants; and

- evidence relevant to Robles and Furminger regarding the theft of the Aida Hotel Laptop;

1. The Objected-to-Evidence Involving Robles and Vargas

The evidence relevant to the charged offenses involving Robles and Vargas show that it is more likely than not that they engaged in a conspiracy to steal property and to distribute controlled substances after making seizures as SFPD officers.[3]

*a. The Joseph Furlong Arrest*

The Joseph Furlong arrest evidence shows that when both Robles and Vargas arrested him on March 2, 2009, they literally picked his pocket of gift cards, jewelry and money and later went to his apartment to steal more items. Apart from the testimony of Furlong, Apple records show Vargas utilized the Apple gift cards a few days later, and Mission Station phone records show calls made from the undercover unit line to check on the balance of another gift card in Furlong's possession the very same day of the arrest. Several witnesses are anticipated to testify that Robles, Vargas and Furminger went to Furlong's apartment and stole additional items. Moreover, testimony is expected to show that Informant D.B., who had performed a controlled narcotics transaction with Furlong, kept the purchased heroin as partial payment and also received OxyContin tablets seized from Furlong. This collective

---

[3] Robles' attempt to characterize his role in the charged conspiracies as "slight" is belied by the evidence in which he is directly implicated. As such, the Court should not entertain his due process claims under *United States v. Castaneda*, 9 F.3d 761 (9th Cir. 1993). Robles Mot. at 6. In that case, the evidence only showed that the defendant wife had a mere six telephone calls with other co-conspirators. *Id.* at 767. Here, the United States has eyewitness testimony of Robles, an SFPD officer, stealing and dealing drugs.

evidence is relevant to proving the drug and federal program theft conspiracies, and neither Robles nor Vargas can show any unfair prejudice.

Based on this anticipated evidence, Robles' claim that "there is no evidence that Robles knew, should have known, or agreed to steal from Furlong" rings hollow. Robles Mot. at 3. Furthermore, Robles' claim that he specifically did not know Vargas would give Informant D.B., Informant J.W. or Kelsey Stewart heroin or unreported cash is of no consequence. A co-conspirator need not know every single action undertaken by every other co-conspirator in a conspiracy. *See United States v. Frega*, 179 F.3d 793, 819 (9th Cir. 1999) ("Every member of the conspiracy need not know every other member nor be aware of all the acts committed in furtherance of the conspiracy.") (citations omitted). The government must produce enough evidence that the particular defendant knew or had reason to know the scope of the criminal enterprise. *See United States v. Abushi*, 682 F.2d 1289, 1293 (9th Cir. 1982). Notably, the United States expects testimony from Informant C.H. that Robles had given him narcotics as payment as well, easily meeting this evidentiary requirement. Robles' argument that "the responsibility for retrieving the purchased narcotics from D.B. fell to Vargas" is tantamount to deliberate ignorance and offers no valid grounds to exclude. *United States v. Jewell*, 532 F.2d 697, 700 (9th Cir. 1976 (en banc) ("Deliberate ignorance as to the circumstances creating the substantial risk is equally culpable with positive knowledge."). Lastly, Robles' FRE 602 foundational objection is best reserved for trial.

*b. The March 2009 UPS Marijuana*

The same rationale applies to the March 2009 UPS Marijuana evidence which is directly relevant to the marijuana distribution charged in Count II. Robles' generous characterization that "[o]ther than Vargas' second-hand statement that he 'cleared' the marijuana distribution plan with Robles and Furminger, there is no evidence that Robles consented to use D.B. and J.W. to sell marijuana" misses the

mark. Robles Mot. at 5. The weight of the March 2009 UPS marijuana evidence cited by Robles does not render the evidence irrelevant or unfairly prejudicial. Moreover, Robles conveniently ignores the anticipated testimony of the informants, UPS employees, a police officer in Barrington, Illinois and SFPD reports.

       *c. The North Beach Robbery*

       The United States will introduce evidence, primarily through the testimony of Informant C.H., that Robles and Vargas, utilizing Furminger's personal pick-up truck, broke into and robbed victims in an apartment in the North Beach neighborhood of San Francisco. Robles objects because a victim failed to corroborate the anticipated testimony of Informant C.H. and adds that the "prejudicial value" is tremendous. Robles Mot. at 5-6. Vargas adds that Informant C.H. is not supported by credible evidence. Vargas Mot. at 9-10. Defendants' claims are without merit or legal support.

       First, this evidence is relevant to proving the civil rights conspiracy charged in Count III. That is, Robles and Vargas, under color of law, conspired to violate the Fourth Amendment rights of the individuals in the apartment against warrantless searches and seizures. Second, the purported lack of corroborating evidence does not serve as proper grounds to exclude evidence as not relevant. Corroboration is only pertinent to the finder of fact to assess credibility. Third, while Robles and Vargas rightly point out that such evidence is prejudicial, they nevertheless fail to show that such evidence is unfairly prejudicial. *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000). "Unfair prejudice" is "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.* Evidence the United States does not intend to introduce, such as Vargas' sexual relationship with Kelsey Stewart or that Vargas and Robles beat Furlong, may have an improper and undue influence on the jury. The North Beach Robbery, on the other hand, will not evoke the same unfair emotional response.

*d. Payment of a Drug Debt of Informant C.H.*

Finally, Robles moves to exclude Robles' satisfaction of Informant C.H.'s debt to a heroin dealer.  Robles Mot. at 6.  The crux of Informant C.H.'s anticipated testimony is that Informant C.H. obtained heroin on consignment, Robles helped satisfy the debt and then "Robles also confiscated some portion of C.H.'s heroin."  Setting aside the legality of allowing Informant C.H. to keep the other portion of heroin, this evidence is relevant for general background to provide the jury the context of the relationship between Informant C.H. and Robles.  Rather than simply arresting Informant C.H.'s heroin dealer for distribution to Informant C.H., as any SFPD officer would, Robles instead helped Informant C.H., his trusted informant, avoid a street confrontation.  Additionally, Robles fails to articulate any unfair prejudice.

*e. Furminger's Threats to SFPD Informants D.B. and J.W.*

Furminger's threats to Informants D.B. and J.W. are likewise relevant to the March 2009 UPS Marijuana charged conduct for consciousness of guilt and to put in context a subsequent conversation between Robles and Informant D.B.  After Informants D.B. and J.W.'s failed attempt at selling marijuana in April 2009, they left San Francisco and moved to Iowa.  At the end of July 2009, they made an ill-advised attempt to extort Vargas for money in July 2009 over the phone.  As leverage, Informant D.B. advised Vargas that she kept part of the original marijuana wrapping as evidence.  At some point during the conversation, Furminger participated in the call and threatened to kill them and to violently rape Informant D.B.  Subsequent to that call, Robles called Informant D.B. in an apparent good-cop approach to soothe the situation.  Mission Station call logs also indicate repeated attempts to call Informants D.B. and J.W. during this time period.  Collectively, this evidence demonstrates the overall concern of Defendants regarding the March 2009 UPS Marijuana and their concerted effort to placate their former informants.

### 2. The Objected-to-Evidence Involving Vargas and Others

Robles next asks the Court to preclude all evidence against him after he was transferred from Mission Station to the SFPD motorcycle unit in January 2010 based on his unsupported proposition that the transfer, in and of itself, "constituted a withdrawal" from the charged conspiracies and "eliminated any possibility" of his further involvement. Robles Mot. at 8. Robles' position is contrary to legal authority. The Ninth Circuit holds that, "a conspiracy continues until there is affirmative evidence of abandonment, withdrawal, disavowal or the defeat of the object of the conspiracy." *United States v. Recio*, 371 F.3d 1093, 1096 (9th Cir. 2004). The foregoing evidence of Vargas' unlawful conduct evinces the continuation of the charged conspiracies, and Robles' mere transfer to a separate unit is legally insufficient to constitute an affirmative withdrawal. Robles must instead show that he actively disavowed the conspiracies or took "definite, decisive, and positive" steps to show his disassociation. *United States v. Loya*, 807 F.2d 1483, 1493 (9th Cir. 1987) (citations omitted).[4] In other words, Robles cannot rely on a blanket Rule 403 objection based solely on his new work reassignment in 2010. With no haven of affirmative withdrawal, the objected-to-evidence remains both relevant and not unfairly prejudicial.

#### a. *The Krasunik MacBook*

As mentioned *supra*, Vargas and others executed a search warrant at a house in San Francisco on February 20, 2010. Furminger was on scene at one point. During the search, Vargas stole an Apple MacBook from Scott Krasunik, a resident of the house. Apple records show that Krasunik had registered the MacBook with Apple prior to the execution of that search warrant and that Vargas registered that same MacBook with Apple, about 16 months later, on June 18, 2011. This evidence is

---

[4] If Robles were to introduce sufficient evidence to make a *prima facie* case of withdrawal, the government would then have to prove beyond a reasonable doubt that he did not withdraw. *United States v. Lothian*, 976 F.2d 1257, 1261 (9th Cir. 1992) (outlining shifting burdens). Even if the government cannot disprove withdrawal, the defendant remains liable for pre-withdrawal actions. *Id.* at 1262.

relevant to the federal program theft conspiracy, and neither Robles nor Vargas have articulated any credible claim of unfair prejudice.

### b. Undocumented Payments and Drugs Given to Informant C.H.

Similarly, Vargas' undocumented payments and drugs given to Informant C.H. on several occasions is nothing more than the actions of a co-conspirator in furtherance of the charged drug conspiracies. Robles' objection to its admission conveniently neglects the anticipated testimony from Informant C.H. that Robles had paid C.H. in drugs as well. It also provides necessary background of Robles and Vargas' informant relationship with Informant C.H. for the jury.

### c. Toshiba Laptop Theft

The anticipated testimony from Informant C.H. is that, on August 12, 2010, Vargas stole a Toshiba laptop during the execution of a state search warrant at 245 Leavenworth and gifted it to Informant C.H. FBI eventually recovered this Toshiba laptop with the assistance of Informant C.H. This evidence is germane to the federal program theft conspiracy and proof of the ongoing nature of the criminal conspiracy.

### d. Search and Seizure of Laptop Containing Child Pornography

On December 7, 2009, Vargas and Robles, along with SFPD Officer Joseph Valdez, recovered a laptop containing child pornography from S.S. However, the SFPD Incident Report falsely reported that the officers had recovered the laptop as abandoned property by a trash bin. Vargas and Robles then opened and searched the laptop, found child pornography that led to an arrest. The anticipated testimony from Officer Valdez, however, is that Robles and Vargas instructed him to make that false report, and Vargas and Robles even partially wrote it. This evidence is relevant for several reasons. First, it is proof of the conspiracy to violate civil rights charged in Count III. The owner of the laptop was prosecuted based on Vargas and Robles warrantless seizure and search of the laptop. Second, the evidence is relevant to provide the jury with the early stages of the relationship between Informant S.S.

and Vargas and Robles, which led directly to their supervisor's extortion of Informant S.S. Robles and Vargas had first interviewed Informant S.S. on December 1, 2009 and formally signed up Informant S.S. as an SFPD informant on January 21, 2010.

### 3. The Objected-to-Evidence Involving Robles and Furminger

Robles objects to Amit Hotel Laptop evidence in which Furminger stole a laptop from an Amit Hotel room during an arrest. He bases his objection on the premise that Sgt. Rachel Murphy, a fellow SFPD officer working with them that day, did not report any misconduct by Robles. However, the evidence belies that and the notion that Robles played no criminal role. The video evidence to be played at trial shows Furminger and Robles, along with Sgt. Murphy, entering a hotel room. At one point, Furminger exits the hotel room carrying a laptop bag. Sherman Richards, the hotel room occupant and arrestee, is expected to testify that Furminger took his laptop out of the room during the arrest. Sgt. Murphy will testify that she had not seen Furminger walk out with the laptop bag until a subsequent investigation by the San Francisco Office of Citizens Complaint. Thus, Robles cannot fairly rely on Sgt. Murphy's purported inaction towards him as grounds for absolution. More importantly, this evidence is directly tied to the federal program conspiracy and is therefore relevant.

### D. Vargas's Motion to Suppress Should Be Denied

Finally, Vargas moves to suppress evidence related to the seizure of one of the stolen Apple MacBooks because federal agents did not have a search warrant. Vargas Suppress at 3. As a threshold issue, Vargas has no standing to challenge any seizure. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978) (requiring a person to have a "legitimate expectation of privacy" in thing to be seized); *United States v. Davis*, 932 F.3d 752, 756 (9th Cir. 1991) (placing burden on defendant to demonstrate expectation of privacy). Here, Vargas lays no evidentiary grounds to meet his burden. Nevertheless, assuming

*arguendo* Vargas was even living or staying temporarily at his mother's house,[5] his Fourth Amendment challenge must still fail for lack of standing.  As set forth in an FBI report dated April 8, 2014,[6]  Vargas' mother advised federal authorities on February 27, 2014 that she had purchased an Apple MacBook with the "help" of Vargas and that it was sitting on a nearby table.  Accordingly, Vargas cannot credibly claim that he had a legitimate expectation of privacy in his mother's laptop sitting on a nearby table and therefore has no standing to make a Fourth Amendment challenge.

Additionally, Vargas' mother consented to the seizure of the Apple MacBook, a recognized exception to the warrant requirement for seizure of evidence.  *United States v. Sheibu*, 920 F.2d 1423, 1425 (9th Cir. 1990) ("A warrantless search of a house is per se unreasonable and absent exigency or consent, warrantless entry into the home is impermissible under the Fourth Amendment.").  The government bears the burden to establish the validity of consent.  *See United States v. Chan-Jiminez*, 125 F.3d 1324, 1326-27 (9th Cir. 1997) (noting "government bears the heavy burden of demonstrating that consent was freely and voluntarily given").  The factors for the Court to assess are: (1) whether the person was in custody; (2) whether the officer had his weapon drawn; (3) whether the officer failed to administer *Miranda* warnings; (4) whether the officer advised the person of the right to refuse consent; and (5) if the person was advised that a search warrant could be obtained.

Assuming the Court were to find that Vargas has standing, the United States would be prepared to prove, through the testimony of FBI Special Agent Sandra Flores, the following: Agent Flores and other federal agents went to Vargas' mother's home in an effort to execute an arrest warrant for Vargas on the instant federal charges.  At that time, the federal agents learned that Vargas was already traveling to San Francisco to surrender.  While at the house, Agent Flores asked Vargas' mother if the FBI could

---

[5] Overnight guests have standing to assert Fourth Amendment violations.  *See United States v. Gamez-Orduno*, 235 F.3d 453, 458 (9th Cir. 2000).

[6] The FBI report was not disclosed to defense counsel until after Vargas filed the instant motion to suppress.

take and search the MacBook. Vargas' mother then called her son-in-law, a purported police officer in

Long Beach unconnected to the federal investigation. After speaking with her son-in-law, Vargas'

mother said "I'm going to give it to them," handed over the MacBook and asked how long it would be

before the FBI would return it. Agent Flores did not have her weapon drawn did not administer

*Miranda* warnings and did not specifically tell Vargas' mother that she could refuse to consent. Agent

Flores did, however, explain that the surrender of the MacBook was voluntary.

## **CONCLUSION**

For these reasons, defendants' motions to exclude and Vargas' motion to suppress should be

denied.

Respectfully submitted,

MELINDA HAAG
United States Attorney

*/s/*
_____

Dated:  October 16, 2014

JOHN H. HEMANN
RODNEY C. VILLAZOR
Assistant United States Attorneys