TERESA CAFFESE (SBN 124342)
LAW OFFICES OF TERESA CAFFESE
1000 Brannan Street, Suite 400
San Francisco, CA 94103
Telephone: (415) 536-1455
Facsimile: (415-522-1506
teresa@caffeselaw.com

Attorney for Defendant
EDMOND ROBLES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EDMOND ROBLES, et al.<br><br>Defendants. | Case No. CR-14-102 CRB<br><br>**DEFENDANT EDMOND ROBLES' MOTION TO EXCLUDE EVIDENCE OF 726 POTRERO INCIDENT ON DUE PROCESS GROUNDS/CONFLICT OF INTEREST**<br><br>TRIAL DATE: NOVEMBER 3, 2014<br>TIME: 9:00 A.M.<br>CTRM: 6, 17TH FLOOR |

Defendant Robles makes the following Motion to Exclude Evidence of alleged wrongdoing on due process grounds and because its presentation at trial would create a conflict of interest for the government. If the Court were to admit the evidence in question, the government would have an obligation to recuse itself from this case. This Motion is based upon 28 U.S. Code 530(B), the California Rules of Professional Conduct, and the Due Process clauses of the Fifth and Fourteenth Amendments to the Federal Constitution.

**INTRODUCTION**

The government will seek to introduce at trial an alleged incident of theft from a residence that occurred during a search on June 18, 2009. On that date, a task force led by Special Agent Megan Long of the Bureau of Alcohol, Tobacco, and Firearms (ATF) executed a search warrant at 726 Potrero

1  Avenue in San Francisco, home of the Reynoso family.[1]   Numerous San Francisco Police Officers
2  assisted on the task force.  After other law enforcement officers conducted a protective sweep, Officers
3  Reynaldo Vargas and Edmond Robles participated in a search of the residence.  They were accompanied
4  by Special Agents Megan Long and Kenneth Kwak.

5        On March 8, 2010, Malaquias and Cayetana Reynoso filed a lawsuit against the ATF, Special
6  Agent Long, and the City and County of San Francisco.  Case No. 3:10-cv-00984-MEJ.  They alleged,
7  among other things, that $200,000 in cash had been taken from their home during the raid.  Case No.
8  3:10-cv-00984-MEJ.  The ATF and Megan Long (agents of the United States government) were
9  represented in the proceedings by Assistant United States Attorney Abraham Simmons.  Over the next
10 four years, Mr. Simmons conducted depositions of the plaintiffs in which he attacked their credibility
11 and the merits of their conversion claim, which formed the basis for numerous Motions for Summary
12 Judgment.  Case, No. 3:10-cv-00984-MEJ, Dckt. No. 114 (attached as Exhibit A).  He also obtained at
13 least one declaration stating that a witness reported nothing was taken during the search.  Case No. 3:10-
14 cv-00984-MEJ, Dckt. No. 112 (Declaration of Fouga Lakalaka, attached as Exhibit B).  Additionally,
15 Special Agent Long denied that anything was taken from the residence apart from what was listed on the
16 Search Warrant Return.  Case No. 3:10-cv-00984-MEJ, Dckt. No. 61 (Declaration of Megan Long, p.5,
17 attached as Exhibit C).[2]

18       Mr. Vargas now accuses Officer Robles of stealing "a few thousand dollars" during the search,
19 which they allegedly split between them.  The government intends to call Specials Agent Long and
20 Kwak and the Reynosos, presumably to corroborate Mr. Vargas' claim.

---

[1] The search warrant was based on the seizure of an assault rifle from that address by San Francisco Police Officers approximately two weeks prior.  Neither of the defendants, nor Renaldo Vargas, was involved in that earlier search.

[2] The government did not disclose these declarations.  The defense obtained them on PACER.

-2-

**DEFENDANT EDMOND ROBLES' MOTION TO EXCLUDE EVIDENCE
OF 726 POTRERO INCIDENT BASED ON GOV'T CONFLICT OF INTEREST**

The government should be prohibited from offering any evidence of this incident at trial because it would violate defendant Robles' due rights under the Fifth and Fourteenth Amendments to the Federal Constitution.

## ARGUMENT

### A. DUE PROCESS REQUIRES EXCLUSION OF THIS EVIDENCE BECAUSE THE GOVERNMENT'S THEORIES OF THE INCIDENT ARE WHOLLY INCONSISTENT.

Inconsistent prosecutorial theories can, in certain circumstances, violate due process rights. *In Thompson v. Calderon*, a plurality of the Ninth Circuit held that the state of California violated a defendant's due process rights by arguing at Thompson's trial that he alone committed a murder, while arguing at a subsequent trial that another defendant actually committed the same murder. 120 F.3d 1045, 1058-59 (9th Cir.1997) (en banc), vacated on other grounds, 523 U.S. 538, 118 S.Ct. 1489 (1998). The Eighth Circuit relied on *Thompson* to overturn a conviction in *Smith v. Groose*. There, a prosecutor selectively used defendants' contradictory statements against each other in separate trials to argue inconsistent theories about which man committed the crime. *Id.* 205 F.3d 1045, 1049 (8th Cir. 2000). Reversing the convictions on due process grounds, the court noted that "the State's zeal to obtain multiple murder convictions on diametrically opposed testimony renders [the] convictions infirm." *Id.* at 1052. See also *Stump v. Mitchell*, 367 F.3d 594 (6th Cir. 2004) (use of conflicting factual theories against different defendants in separate proceeding concerning identity of shooter constituted denial of due process) *rev'd on other grounds* in *Bradshaw v. Stumpf*, 545 U.S. 175 (2005).

Here, the government seeks to advance wholly inconsistent theories of the same incident in its pursuit of a criminal conviction. By asserting in its defense of the ATF and Megan Long that the Reynosos' claim of conversion lacked merit, the government is precluded from now asserting the inconsistent theory that property was, in fact, stolen. The government now seeks to adopt the account of those plaintiffs and alter the claims made by Special Agent Long. This contradictory interpretation of the same event raises the same concerns expressed by the courts in *Thompson, Groose, and Mitchell*. The only distinction here is that instead of contradicting itself as to *who* committed the crime, the government has reversed itself as to whether there was any wrongdoing to begin with. Clearly, this is a

-3-

preliminary question of fact for the jury that raises the same due process concerns expressed by the Ninth, Eighth, and Sixth Circuits.  Therefore, Due Process requires that the 726 Potrero incident be excluded.

**B. EVIDENCE OF THE 726 POTRERO INCIDENT MUST BE EXCLUDED BECAUSE THE GOVERNMENT'S NEW THEORY OF THAT INCIDENT IS DIRECTLY ADVERSE TO THE POSITION IT TOOK IN ITS DEFENSE OF THE ATF AND MEGAN LONG.**

Apart from the due process violation, presenting this evidence at trial creates a conflict of interest for the government.[3]  The code of conduct for attorneys for the government derives from state laws and rules, and local Federal court rules, governing attorneys in each State.  23 U.S.C. § 530(B)(a).  California Rules of Professional Conduct prohibit attorneys from representing clients with adverse interests without written consent.  Rule 3-310(B).  The Bar Association additionally notes that Rule 3-310 does not create a bar to representation of clients with adverse interests in different cases *unless representation of either client would be adversely affected.*  Cal. Rules of Prof'l Conduct R. 3-310, Discussion.

Here, the interests of former clients, ATF and Megan Long, are directly adverse to, and cannot be reconciled with the government's presentation of the 726 Potrero incident at trial.  In the civil case, the government took the position that there was no merit to the claim of conversion based on the Reynosos' responses to questioning by AUSA Abraham Simmons.  In its Motion for Summary Judgment (Exhibit A), the government argues as follows:

> First, as noted above, there is no evidence of any particular sum of cash being in the closet before the search began. Indeed, there is no evidence the money, if it ever existed, ever was in the closet on the day of the search. Instead, the only evidence is that Malaquias Reynoso counted a large sum of money some unspecified number of days earlier. Second, the record is clear that the Reynosos handed over their keys to the closet to someone other than a federal employee. The Reynosos testified that they handed their keys to officers who had guns and

---

[3] The government is aware of this conflict and should have disclosed it.  *See, e.g., United States v. Stantini* (2d Cir. 1996) 85 F.3d 9, 13 (convictions are placed in jeopardy and scarce judicial resources are wasted when possible conflicts are not addressed as early as possible); *United States v. Malpiedi* (2d Cir. 1995) 62 F.3d 465, 470 (the government should inform the court of potential conflicts "at the earliest possible moment").

who were securing the residence. No federal employee participated in the part of the operation that included securing the Reynoso residence. Instead, the federal employees arrived later. Thus, persons who were not federal employees had access to the closet before any federal defendant arrived. Third, the Reynosos both admit they did not see anyone walk out of the house with their money. Fourth, the Reynosos also acknowledge that they were in the living room for literally hours while tens of persons combed the house for weapons. Under these circumstances, there is simply insufficient evidence to go forward with a claim of circumstantial evidence against the United States for the conversion of the alleged loss of cash and other valuables.

Further, to this point, it bares noting that plaintiffs have identified Megan Long, a federal Special Agent, as the person responsible for the loss of the money. At the same time, the Reynosos acknowledge that Megan Long was the Special Agent asking them questions while the house was being searched; thus, she had the least opportunity to abscond with any of the Reynosos' belongings. Case No. 3:10-cv-00984-MEJ, Dckt. No. 114 (Motion for Summary Judgment, p.19, Exhibit A).

This is precisely the argument that the defense will seek to use on behalf of Officer Robles in the event this evidence is admitted at trial. In essence, the evidence and arguments that will be used to impeach Special Agent Long, Malaquis Reynoso, and Cayetana Reynoso at trial will be drawn directly from depositions and documents prepared by the government in the course of defending Special Agent Long.

Even if the government somehow argues that its defense of the ATF and Special Agent Long does not preclude it from accusing Officer Robles of wrongdoing, its case is nevertheless undermined by its earlier reliance on evidence that Special Agent Long was in charge of the task force, that she accompanied Officer Robles in the search, and nothing was taken apart from what she listed on the Search Warrant Return.

C. **THE CONFLICT IS UNWAIVABLE UNDER THE RULES OF PROFESSIONAL CONDUCT.**

The government's conflict of interest is unwaivable. Conflict rules are intended "not only to prevent dishonest conduct, but also to avoid placing the honest practitioner in a position where he may be required to choose between conflicting duties or attempt to reconcile conflicting interests. *Woods v. Superior Court* (1983) 149 Cal. App. 3d 931, 936. An unwaivable conflict of interest may exist "not

only where it is clear that the attorney will be adverse to his former client but also where it appears that he might." *Id.*  Therefore, all evidence of the 726 Potrero incident must be excluded.

## CONCLUSION

The government's position that nothing was taken from 726 Potrero is wholly inconsistent with its apparent intent to claim at trial that Officer Robles stole from the Reynosos.  Evidence and argument to that effect will violate Officer Robles' right to due process.  Furthermore, the government's former representation of the ATF and Special Agent Long will create an unwaivable conflict of interest if the evidence is presented at trial.  Rather than seek disqualification of the government on the eve of trial, Officer Robles simply requests that this Court exclude the 726 Potrero incident in its entirety.

DATED:  October 31, 2014

Respectfully submitted,

LAW OFFICES OF TERESA CAFFESE

By: __/s/_____
    TERESA CAFFESE
    Attorney for Defendant
    EDMOND ROBLES