Volume 9

Pages 1789 - 1824

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE CHARLES R. BREYER, JUDGE

UNITED STATES OF AMERICA, )
)
Plaintiff, )
)
vs. ) NO. CR 14-102-CRB
)
IAN FURMINGER and EDMOND ROBLES, )
) San Francisco, California
Defendants. ) Tuesday
) November 25, 2014
) 9:03 a.m.

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiff:
MELINDA HAAG
United States Attorney
450 Golden Gate Avenue
San Francisco, California 94102
BY: JOHN HENRY HEMANN
RODNEY C. VILLAZOR
Assistant United States Attorneys

For Defendant Ian Furminger:
LAW OFFICES OF BRIAN H. GETZ
201 California Street
Suite 450
San Francisco, California 94111
BY: BRIAN H. GETZ, ESQ.
JOHN PAUL PASSAGLIA, ESQ.

Reported by:
BELLE BALL, CSR 8785, CRR, RDR
Official Reporter U.S. District Court

(Appearances continued, next page)

**APPEARANCES, CONTINUED:**

**For Defendant Edmond Robles:**
**LAW OFFICES OF TERESA CAFFESE**
**1000 Brannan Street**
**Suite 400**
**San Francisco, California 94103**
**BY: TERESA CAFFESE, ESQ.**
**HEATHER KELLY, ESQ.**

**Also Present:**
**Defendant Ian Furminger**
**Defendant Edmond Robles**
**Special Agent Melissa Patrick**
**Special Agent Sandra Flores**
**Dalida Vartanian**
**Stephen Janick**
**Alycee Lane**

**TUESDAY, NOVEMBER 25, 2014 9:03 A.M.**

**P R O C E E D I N G S**

(The following proceedings were held in open court, outside the presence of the jury:)

**THE CLERK:** Please come to order.

**THE COURT:** Okay, let the Record reflect -- please be seated.

Let the Record reflect that the parties are present; the jury is not present.

So, as I understand it, I'll bring in the jury, and -- and both Defendants are going to rest, and I'll dismiss the jury until Monday. Is that correct?

And I'll do other things.

**MR. HEMANN:** Yes, Your Honor.

**MR. GETZ:** Yes, Your Honor.

**MS. CAFFESE:** Yes, Your Honor.

**THE COURT:** Okay. Bring in the jury.

(The following proceedings were held in the presence of the Jury)

**THE COURT:** Please be seated.

Okay, let the Record reflect all jurors are present; the parties are present.

Mr. Getz, any further testimony?

**MR. GETZ:** On behalf of Mr. Furminger, defense rests.

**THE COURT:** Okay. Ms. Caffese, any testimony?

**MS. CAFFESE:** Thank you, Your Honor. No.

**THE COURT:** Do you rest?

**MS. CAFFESE:** We rest, yes.

**THE COURT:** Okay. And there is no rebuttal, is that correct, Mister --

**MR. HEMANN:** No, there's not. Thank you, Your Honor.

**THE COURT:** Okay. So, ladies and gentlemen, as you just witnessed, the evidentiary portion of the case is concluded. And, that leaves several other tasks ahead of us. First will be the argument of the parties. Well, actually, first will be my instructions to you, as to the law. That will be followed by argument of the parties. And then of course, deliberations.

Now, we have a couple of possibilities. First of all, I have to go over a number of legal matters with the parties, which would take some time, some time this morning. That would put us in a position where argument would start late this morning or early this afternoon, but probably not necessarily be concluded before our break.

So, what I've discussed with the parties and what we're going do is excuse you for the day, now, which will give you a head-start on all those Thanksgiving preparations. And, have you come back Monday morning at 8:30. 8:30. And we will start sharp at 8:30 with the Court's instructions. And you will hear argument on Monday. And you will commence your

deliberations on Monday. And then at that point, the case is entirely in your hands.

So that is our schedule. I'm sorry in a way that you came in today. I'm sure it did inconvenience you, and I apologize for that. But on the other hand, there's no way of knowing in sufficient time exactly what the schedule is of any trial. It just isn't run -- it is run somewhat by a schedule, but it's not run completely by a schedule. And so decisions are made and arguments are made and so forth that sometimes throw our schedule off-kilter.

However, our schedule will be Monday at 8:30 for instructions, and you will get the case for deliberations on Monday.

So, ladies and gentlemen, you're going take a long break now. This jury is used to long breaks, I think. And we will commence the trial on Monday. Of course, it's very important to remember the admonition: Don't discuss the case, allow anyone to discuss it with you, form or express any opinion.

The fact is that you would be well-served not to think about the case, to the extent you are able not to think about the case. The remainder of the case is extraordinarily important. You know, the -- the instructions of the Court, the Court always likes to think the Court's instructions are so important, but I think they are. They define what the criminal offenses are. They define what the burden of proof

is. They give you some guidance as to how to interpret the evidence. And it's a very, very helpful framework for your task in -- in determining the outcome of the case.

Secondly, the arguments of counsel, which, while they're not evidence, are also very useful because they sum up all the different pieces. And you know, trials, you hear by way of pieces. One piece, another piece, and so forth.

But, it is up to the lawyers to tie the pieces together. What do they mean? Why is this document introduced? Why were these questions asked, or what were the answers to these particular questions? And it's very, very helpful in assisting you in your deliberations.

And of course, finally, you will all be able to express your views to one another. You know, I keep saying, "Don't discuss the case." Well, I want you, on Monday and afterwards, to discuss the case. That's the whole point, is discussing the case.

And you listen to the views of your fellow jurors, and they will be interesting, and you will decide whether it changes your views or how it helps you through the process of coming to a verdict.

So, with that, ladies and gentlemen, please leave your note pads in the jury room. I'll see you at 8:30 on Monday. Have a very happy Thanksgiving. Eat plenty of turkey.

Okay. There we are.

(Jury excused)

(The following proceedings were held outside of the presence of the Jury)

**THE COURT:** Okay, let the Record reflect that the jurors have left. And so, let's take up a few instructions now, which I think we are in a position to do.

Last night the Court filed its proposed jury instructions. And, I'm just going to -- I think the best way to proceed is just to go through the order of them. If anybody has an objection that they haven't raised already, they can complain. Okay? Or point it out to the Court.

No. 1.

No. 2.

I have to change it to "fact that..." I'll say "The Defendants did not..." I've got to do the plural.

4. 5. 6. 7. 8. 9. 10. 11.

Well, let's see. Let's see about 12.

**MR. HEMANN:** 12, I think we discussed yesterday not doing 12.

**MR. VILLAZOR:** We don't want 12.

**THE COURT:** Okay, 12 is out. 13.

**MS. CAFFESE:** Objection, Your Honor.

**THE COURT:** Pardon me?

**MS. CAFFESE:** I do have a comment to make on 13.

**THE COURT:** Yes.

**MS. CAFFESE:** Yesterday I had requested that the Court include that Reynaldo Vargas admitted to making falsehoods in police reports, in making false statements to the Office of Citizen Complaints, and giving false testimony in a prior case.

So, the portion which I would ask be included in this instruction is, quote, "...and giving false testimony in a prior case," which was the Andrew --

**THE COURT:** I don't know that he gave false testimony in a prior case.

**MS. CAFFESE:** He --

**THE COURT:** He -- he -- I think he admitted that he lied to an officer -- OCC. So, is that a case?

**MS. CAFFESE:** No, Your Honor.

**THE COURT:** Is that a case, or a what?

**MR. HEMANN:** What he admitted to was that in the prelim in the Andrew Byrd matter -- so, Andrew Byrd was the fellow who was arrested with the methamphetamine.

**THE COURT:** Right. Well, he did say that.

**MR. HEMANN:** What he admitted to was that he did not in that case reveal that he was -- but he -- there's no foundation that he was asked --

**THE COURT:** No.

**MR. HEMANN:** -- "Did you steal money" and that he lied in response of that. Now, would he have -- of course, he

would have, but he did not -- the question, of course, wasn't asked during the prelim. And the police report that he admitted that he lied in by omission seems more than sufficient.

I think this is an unnecessary point that will confuse the jury. And it is not supported by the evidence in this case.

**MS. CAFFESE:** May I, Your Honor?

I don't believe it would confuse the jury, because it's simply fairly --

**THE COURT:** What about the question of whether --

**MS. CAFFESE:** Yes.

**THE COURT:** -- he was asked -- he was asked a particular thing in his -- in the preliminary hearing, which he then falsely stated?

**MS. CAFFESE:** I asked him whether or not he committed perjury in the preliminary hearing of Andrew Byrd. And he said, essentially, yes. He admitted to --

**THE COURT:** Wait a minute. You've got to be careful of words like "Essentially, yes."

**MS. CAFFESE:** Well --

**THE COURT:** First of all, did you use the word "perjury"?

**MS. CAFFESE:** "Lied," I believe.

**THE COURT:** Pardon?

**MS. CAFFESE:** I believe I asked him -- my

recollection --

**THE COURT:** Well, we can't have a recollection. I actually have -- you people all have a transcript.

So, anyway --

**MS. CAFFESE:** Pass it.

**THE COURT:** Anyway, I think it's argument. I'm not going to give it. I think there's some uncertainty about what -- no one's giving me the statement that he made.

**MR. HEMANN:** I'll look, Your Honor.

**THE COURT:** So, I don't know quite what it is. But words like "perjury," "materiality," what -- the issue, he wasn't confronted with it; he was simply asked about it.

I'm not giving it because I think it's somewhat uncertain, and also, it is argument. You may argue it.

**MS. CAFFESE:** Just for the Record, Ms. Kelly stated that he said, quote, he lied by --

**THE COURT:** Just read it to me. All right? Don't -- you have it in front of you.

So what you do is you say to me, "On Page such and such, this was asked and this was answered."

(Off-the-Record discussion between counsel)

**MS. CAFFESE:** Question, on Line 17, Page 1534.

**THE COURT:** Question, answer.

**MS. CAFFESE:** Yes (As read):

"QUESTION: And you lied under oath in a felony case

dealing with -- with that case that you were involved with. Is that right?

"ANSWER: If it pertains to the entry of the -- of the unit, then yes, I probably -- because I don't think I ever mentioned that we probably used a key.

"QUESTION: Well, how about if it pertains to stealing money from Andrew Byrd?

"ANSWER: Then by omission, yes, I did."

**THE COURT:** Well, "by omission." I'm sorry; I don't know what that means. I don't know what that means.

All he's saying is, "I didn't say that the money was taken," or "I omitted this; I omitted that."

That may or may not be perjury. May or may not be a lie. May or may not be material.

I mean, there are a lot of things, I'm just saying, that I don't know, that the Record doesn't establish. And so I'm not going to make a specific finding with respect to it which would be included in the instructions, which in my view would be argument.

Okay. Moving ahead. No. 14. No. 15. And, here we are on No. 16. Counts 1 and 2, Wire Fraud.

Okay. Does anybody have any comments on that proposed jury instruction?

**MR. GETZ:** So far, the only modification is that the Court took out the word -- the words "participated in."

Is that correct?

**THE COURT:** Well, I don't know, I mean -- Mr. Getz, while I would like to be really helpful, this has gone through a lot of different hands. And I'm not going to represent to you what I took out, what I didn't take out, what words.

The question is: It's in front of you. If you have a problem with it, now is your time to say something.

**MR. GETZ:** Then if it's not out already, I object to the words --

**THE COURT:** Well, read it. Excuse me. Excuse me. Mr. Getz. What you really have to do is look at the one I filed last night.

Do you have that?

**MR. GETZ:** I do not.

**THE COURT:** Oh. Well, that's a problem. Okay. Then we can't go anywhere.

Do you want a set? Or --

**MR. VILLAZOR:** We can --

**MR. GETZ:** I have one now.

**THE COURT:** Okay.

**MR. GETZ:** Thank you.

**THE COURT:** This is the time to go through these instructions. All right?

**MR. GETZ:** All right. As, as --

**THE COURT:** So, take a moment. Read it. And then

tell me if you have a problem with anything in it. Or anything I've left out.

**MR. GETZ:** I do not.

**THE COURT:** Okay.

**MR. GETZ:** Thank you.

**MR. HEMANN:** The -- the -- how picayune would you like me to be, Your Honor?

**THE COURT:** I would like you to be as -- your usual picayuneness.

**MR. HEMANN:** I would probably need to go back to my office. But the fourth, the margin is wrong on the fourth.

**THE COURT:** Well, that's being picayune.

**MR. HEMANN:** I just -- I -- I asked.

**THE COURT:** Okay. But that's -- that is serious, and we're going to have to correct that.

Okay. Okay. I think that's a good way of characterizing it. I've never quite had that objection before.

**MR. HEMANN:** Certainly not from me, I'm sure, Your Honor.

**THE COURT:** No, but I'm now going to hold your office to that standard.

**MR. HEMANN:** When I stand up and I say, "Objection; picayune," I'm sure you'll know exactly what I'm talking about.

**THE COURT:** I know. I'll call it "the Hemann

objection."

Okay. No. 17.

(Off-the-Record discussion between counsel)

**THE COURT:** Let me just make sure that I'm on the same page. Counts 3 and 4 relate to Sergio --

**MR. HEMANN:** Yes, Your Honor.

**THE COURT:** Only?

**MR. HEMANN:** Yes, Your Honor.

**MR. VILLAZOR:** Yes, Your Honor.

**THE COURT:** Okay. I think that should be in the instruction. I think that we've had a number of victims testify, and it's important for -- it's important to cabin it in an instruction, in terms of clarity.

**MR. HEMANN:** I think that's fine. Just so the Court and Counsel knows, the way I was intending on structuring the closing was to divide the conduct into two buckets.

**THE COURT:** You can do it any way you want to do it, but I mean --

**MR. HEMANN:** And put this in the Sergio bucket.

**THE COURT:** Okay, that's great. So --

**MR. HEMANN:** I intend to be very explicit about that.

**THE COURT:** What if I do this? What if I put "honest services, wire fraud," and then put a parenthesis, "Sergio..." I don't know his last name.

**MR. VILLAZOR:** Sanchez.

**THE COURT:** "Sergio Sanchez." Well --

**MR. HEMANN:** Conduct relating.

**THE COURT:** What if I do this? In the first sentence, instead of ending with 18 U.S. Code, say, "as it relates to Sergio..." "as it relates..."

**MR. HEMANN:** Perhaps "...to conduct involving Sergio Sanchez"?

**THE COURT:** "...to conduct involving Sergio Sanchez." Okay. I think that's -- that's fairer to the Defendants, because I think that they don't have the mass of all that information.

That doesn't mean that they don't consider the mass of information, but it means that the government has to prove that the honest-service fraud occurred with respect to Sergio Ramirez -- Sanchez, and not some other person. I just think that's fair.

Anybody got a problem with that?

**MS. CAFFESE:** No.

**MR. HEMANN:** No, Your Honor.

**MR. VILLAZOR:** No, Your Honor.

**THE COURT:** Okay. Moving on to 18.

So, what I've done -- I would like to take complete credit for it, but I can't -- what I've done here is sort of give you a -- a definitional instruction, because these terms come up all the time. "Scheme," "knowingly," "intent to defraud,"

"materiality," "wire communication." And, this is basically boilerplate.

But the problem is when you start using these terms in the context of three different conspiracies and then substantive counts, everybody gets lost in it.

So, I just take it all out -- I don't mean take it all out. Take the definitional parts out of the substantive counts, and put it all in this one.

So that's why it says, "Counts 1, 2, 3 and 4 turns..."

Anybody got a problem?

**MR. GETZ:** I have -- I'm sorry; go ahead.

**MR. HEMANN:** Go ahead.

**MR. GETZ:** I have one request on behalf of Mr. Furminger, pertaining to the first sentence.

I think it should read:

"A 'scheme' is any plan or course of action formed with the intent to accomplish some unlawful purpose."

I think you need that word "unlawful," because if the scheme -- there could be a scheme --

**THE COURT:** Okay.

**MS. CAFFESE:** And I would join in that, Your Honor, on behalf of Mr. Robles.

**THE COURT:** Why is that a problem?

**MR. HEMANN:** Well, because they do not -- they do not have to know that the conduct is unlawful, in that it violates

a particular statute. And I'm a little concerned --

**THE COURT:** Okay, wait a minute.

"A 'scheme' is any plan or course of action formed with the intent to accomplish..."

"...which purpose is unlawful"? Comma, "which purpose is unlawful"?

**MR. HEMANN:** I think that's fine, Your Honor.

**THE COURT:** Okay.

**MR. HEMANN:** And in the last sentence --

**THE COURT:** Well, wait a minute.

**MR. HEMANN:** Sorry.

**THE COURT:** I'm just trying to write these down.

**MR. HEMANN:** All right.

**THE COURT:** Okay. Go ahead, Mr. Hemann.

**MR. HEMANN:** I guess I -- we would ask that you add "words, statements and conduct." Because I think that --

**THE COURT:** Yes, I think that's right. On Line 7, after the word "statements."

Okay? Anything else?

**MR. GETZ:** I guess -- I don't mean to be --

**THE COURT:** Picayunish.

**MR. GETZ:** I can't even pronounce the word, but I went to Washington High School. If I had gone to Lowell, as some us did, I would have had a better education.

**THE COURT:** Exactly. And, you know, I've been a

little disappointed, you know, sitting here.

I mean, I have a lot of friends who went to Washington. And they might know these words like "picayunish."

**MR. GETZ:** I will also note that Class of '70 rules, in case anyone is listening.

But on Line 7, I think the word "they" is confusing, and it should be "those." Because the "they" is not the Defendants. The "those" refers to "words, statements and conduct." So I would request "those" instead of "they."

**THE COURT:** That's pretty good. My English teacher would have caught that. Mrs. Wallach. Her sister was Pauline Kael, who was for many years the *New Yorker* film critic. And, she was a remarkable person. As was my English teacher.

I would get back my papers, and they would look like Christmas trees. It would be green and red, and maybe an occasional blue on it. No room for me to write or say anything. It was just filled with -- it was -- it was terrible, that course. I mean --

**MR. GETZ:** I have done worse, Your Honor. I came out of a mathematics exam, owing points to the school.

**THE COURT:** Well, that's the difference, Mr. Getz, because my -- my forays into science were simply unappreciated by my teachers. They didn't understand that basically my answers were intended to be ironic.

And unfortunately -- but that's why I ended up in law

school, not medical school. Much to the benefit of patients, and much to the detriment of clients. But, there we are.

Okay. What's next? Normally, judges have these conferences off the Record. Now you can see why.

(Reporter interruption)

**THE COURT:** W-A-L-L-A-C-H. And Pauline Kael, as in Kael Eggs in Petaluma. She is part of the egg family in Petaluma. K-A-E-L.

Anything else on this instruction?

**MR. GETZ:** No, Your Honor.

**THE COURT:** Okay. Moving on to No. 19, Vicarious Liability.

20. Conspiracy. General Elements of a Conspiracy. I want to give the general instruction. I think I'm required to do so.

Then we come to the civil-rights violation. I don't think there is anything unusual about this, except, as you see, there's no overt act.

Count 6 is a conspiracy to commit theft from a federally-funded program -- it sets forth the overt acts.

And we get to Conspiracy, Knowledge and Association with Other Conspirators. That's a traditional one.

The Pinkerton charge, as it relates to Count 6. And then we get to -- now, the way Count 6 is -- Count 7, pardon me -- they don't all have to agree as to -- is that right? They

don't all have to agree as to which item (As read):

"Third, during the one-year period, the defendant embezzled, stole..."

Et cetera, et cetera, et cetera.

"...with each of you agreeing that at least one item of property..."

Is that intended to be unanimity as to which item of property? Or is that intended simply -- because that's different from --

**MR. HEMANN:** I think the unanimity comes at the end.

(Off-the-Record discussion between the Court and Law Clerk)

**THE COURT:** Oh. Pardon me. Thank goodness for my -- yes, it is unanimity. Okay.

Now, that's an important consideration. And I think the government takes a different view from the -- do you understand that?

**MR. HEMANN:** Not as to 7.

**THE COURT:** Okay.

**MR. HEMANN:** As to 8, we do.

**THE COURT:** Everybody is happy with 7. So now, let's go to 8.

8. Aiding and abetting. I'm going to add the word "only," says "Count 7 only," and then -- because aiding and abetting only applies to Count 7. It does not apply to the

conspiracies.

**MR. HEMANN:** Correct.

**THE COURT:** Now we come to the extortion.

**MR. VILLAZOR:** Your Honor?

**THE COURT:** Yes.

**MR. VILLAZOR:** Back to No. 25, I think, on Page 30 of your proposed instruction --

**THE COURT:** Yeah.

**MR. VILLAZOR:** I think we have to have -- it's actually March 1, 2009. What's underlined there? The indictment charges the one-year period as March 1, 2009 through February 28, 2010.

**THE COURT:** Okay. Is that what the indictment says?

**MR. VILLAZOR:** That's what the indictment says.

**THE COURT:** March 1st?

**MR. VILLAZOR:** March 1st. I just didn't want any confusion as to where March 9th --

**THE COURT:** Okay. I'll change that, unless there is some issue.

Thank you.

Then we get to -- now, here's the problem. The *Payseno* case. Is that the one? It's the *Payseno* case. 782 F.2d, 832, the one that Mr. Getz addresses as well.

Looking at it, without going into any of the logic -- any of -- whether it's helpful or not, the defendant in that case

was charged with committing an extortionate act. And there were several victims. Okay.

And, in this case, there is only one victim. But, the extortionate act is obtaining one of six items -- one, two, three, four, five -- one of five items, any one of five items, as the *quid pro quo* for not arresting him. I guess that's the argument, as I understand it.

In other words, a Defendant was given a Nikon camera, or a GPS, or bottles of perfume, or a power drill, or Herradura tequila. Given one of those five items, or more, one or more of those five items.

And that was the -- the *quid* of the *quo*, or that was -- that was what he was -- he gave that involuntarily, I guess. He was extorted out of that property in exchange for not being arrested.

So the question is: Do all jurors have to agree as to what particular item of property was the -- was the subject of what was being extorted? And reading the case, I think the answer is yes.

Because, the Court said in that case, it said (As read):

> "When it appears, however, that there is a genuine possibility of jury confusion..."

Leaving that one aside for a minute.

> "...or that a conviction can occur as a result of different jurors concluding that the defendant

committed different acts, the general unanimity instruction does not suffice."

And here, here, we have five different acts. At least, that's how it's charged, and that's what I would think it is. One act is getting perfume. One act is getting a camera.

I mean, it's not even at the same time, by the way. It's not part and parcel, "Here's a grocery bag of things that you might like." It was on such and such a date, he was given, sold, whatever you want to -- however you want to argue it, a Nikon camera. Another time, a DeWalt power drill. Another time, da, da, da, da, da. Each one of which would constitute an extortionate act, if the jury so found.

And the problem you have here is six could conclude it was the DeWalt power drill, and six can conclude it's the GPS. I concede that 12 people believe that he committed extortion. But, if the case were tried individually as to each thing, he would be acquitted. Not acquitted; he would not be convicted. Because you don't have 12 people who say he got the power drill. You don't have 12 people who say he got the -- the perfume.

And that's -- that's the problem. A conviction wouldn't sit as to extortion, by unanimity, unless you had unanimity. And you don't have it here.

Now, you know, this (Indicating) is 1986. And I haven't seen a case that directly addresses this particular point in

the context of a single victim. And, that is a difference. But, I think that's a difference without a distinction.

Go ahead, Mr. Hemann.

**MR. HEMANN:** So, on the issue of how it was charged, I -- I guess we would disagree with the Court that it was charged as: The exchange of this item resulted in this benefit; there was an exchange to this benefit.

It was charged as: The Defendant obstructed, delayed and affect in any way and degree commerce in the movement of goods and commodities in commerce, by extortion, that is, by obtaining property, not specified, from S.S. with S.S.'s consent induced under color of official right.

So, the indictment doesn't say this act -- this item in exchange for this act or omission; next item in exchange for next act or omission.

I think that our theory of our case and the way it's charged is that it was a pattern of give and take, which I think not only is how it was charged and how the statute permits it to be charged --

**THE COURT:** Well, it's charged -- it's fine, and the statute permits that.

But the question is: Under the evidence that comes in and the government's theory -- well, forgetting the government's theory for a minute, because the government's theory is in an indictment and how it -- so forth.

**MR. HEMANN:** Right.

**THE COURT:** But, how do you deal with the problem of where 12 people don't agree that he was given a particular item of property?

**MR. HEMANN:** Because we're asking them to agree on a course of extortionate conduct, as alleged in the indictment.

There is a -- there is an improper commercial relationship that exists between Mr. Sanchez and Mr. Furminger. And as a result of that course of improper commerce -- commercial -- then you've got a situation where he's giving things on a repeated basis.

And in real life, there wasn't one thing. It wasn't like one day he handed him a GPS, and said --

**THE COURT:** Okay, let's say you charged -- let's say you brought six counts. Five counts. You have five counts. Such and such a date, or on or about, he received a Nikon camera. On or about, he received a GPS. On or about, he received a bottle of perfume.

Okay. In each of those cases, there would not be a conviction. Theoretically.

**MR. HEMANN:** There could -- correct. But if that were the evidence, then we may have charged it that way.

**THE COURT:** Oh, that is the evidence.

**MR. HEMANN:** Well --

**THE COURT:** The evidence is that on various dates, he

received various items. You collected it for a variety of reasons. But you collected it, and you say, "There, that's extortion."

And, and the problem is that if you were to try it individually, there wouldn't be a conviction.

I'm not saying that there wouldn't be. I'm saying conceivably, there wouldn't be.

**MR. HEMANN:** But I think the reason -- or a reason why in this case it wasn't charged that way is because the -- the theory -- and we believe the reality is supported by the evidence in this particular case -- is that it is a course of extortionate conduct that's illegal.

**THE COURT:** This is what *Payseno* says. It says (As read):

"Here..."

In that case.

"...the government introduced evidence of three offenses supporting one count of the indictment."

That's what we have here. We have five offenses, supporting one count of the indictment. Because any one of them would support the indictment.

**MR. VILLAZOR:** Your Honor, if I may --

**THE COURT:** Yes, you may.

**MR. VILLAZOR:** In *Payseno*, we're talking -- the central issue here was jury confusion. And there, you had not

only three separate courses of extortion, but you had three separate victims. That's not the case here.

And I think there was a case that we submitted in a brief this morning, *Anguiano* -- I have a copy for the Court. A-N-G-U-I-A-N-O. That's a drug conspiracy charged against a single defendant.

But the Court, the Ninth Circuit, elaborated more on *Payseno*. And they --

**THE COURT:** Let me see it.

(Document handed up to the Court)

**THE COURT:** Yeah. Two years later.

**MR. VILLAZOR:** Two years later, yes, Your Honor.

But it did elaborate as to jury confusion as the primary focus for the Court, whether or not they should give just the, you know, general unanimity instruction, or a specific one.

**THE COURT:** A very -- a very different panel.

**MR. VILLAZOR:** Yes, that is true, Your Honor. However, it is --

(Off-the-Record discussion between counsel)

**THE COURT:** I just note that.

**MR. VILLAZOR:** But Your Honor, in that case --

**MR. HEMANN:** It was Judge Nelson, who's not so different than --

**THE COURT:** Is it T.G. or Dorothy?

**MR. HEMANN:** I think in that era, it must have been

Dorothy. Right?

**THE COURT:** I don't even know that -- (Inaudible)

**MR. HEMANN:** Which should add significant weight to our point, if I'm correct, Your Honor.

**MR. VILLAZOR:** Your Honor, within Page 1319 to 1320, that sets forth the three scenarios that the Court was saying a specific unanimity instruction would be appropriate.

One, obviously, if the jury passes a note and says they're confused. Two, if the indictment is overbroad. And, three, if the factual evidence is sufficiently complex.

And in this case, it's not. It's --

**THE COURT:** Well, I don't know -- I don't know that it's not. Each item, each item, it tells a story.

I mean, there's one story to the -- perhaps with the GPS; there's another story to the power tools. There's another story to something else.

Well, look. I appreciate it. I'll look at this again. But I'm going to give it as -- as: The jury must agree.

I assume that's what the defense wants. Is that right?

**MR. GETZ:** It is. And I'm not going to say any more, as long as that's the ruling.

**THE COURT:** That is my ruling.

Okay. Instruction No. 28, Controlled Substance. I'm taking out of that instruction -- if I haven't already in the copy that you have, what -- a conspiracy is. I've already

covered it.

So, that then takes us -- those are all the instructions. That then takes us to the verdict form. I don't know that you have -- have you supplied a verdict form?

**MR. HEMANN:** We submitted one, Your Honor.

**THE COURT:** Okay.

**MR. HEMANN:** We filed, we ECFed it.

(Off-the-Record discussion between the Court and Law Clerk)

**THE COURT:** Has the defense looked at it?

**MR. VILLAZOR:** We ECFed it, Your Honor. I don't know if --

**THE COURT:** Okay. Well, I'm getting a copy. I just want to make sure we don't have any problems. And then we'll recess.

**MR. GETZ:** I haven't looked at the verdict forms.

**THE COURT:** You'll see it in a minute.

**MR. GETZ:** Pardon?

**THE COURT:** You'll see it in a minute.

**MR. GETZ:** (Nods head) But it seems to me the verdict form has to be modified, in light of the Court's unanimity ruling.

**THE COURT:** Oh, I don't know that I do that. I don't know that I do that.

**MR. GETZ:** It's a choice the Court has, as to what

the verdict form --

**THE COURT:** I don't ask them. I mean, I -- you can make that request, and I think I may have that authority to do it. But, I'm not sure I'm going to do it.

I've never before asked them a specific -- though I think I can -- the specific way that they got to the general verdict. I'm not inclined to do that, though I have your request in mind.

But, let's take a look and see. Maybe the government requested it.

**MR. HEMANN:** We did not request it, Your Honor.

**THE COURT:** Okay. Unlikely.

While we are waiting, how long do we anticipate arguments to be? With the thought in mind that the jury will fall asleep after an hour.

(Document handed up)

**THE COURT:** Here we are. Thank you. Here, I have the form verdict. It just has -- it has each count as to each -- and then the Defendants are collected under the counts.

It needs a date line, but other than that -- Would you hand this to -- Have you seen this?

**MS. CAFFESE:** I have not, Your Honor.

**THE COURT:** Barbara, will you hand this to Ms. Caffese?

It needs a date line, and sign and date it.

(Document handed down)

**MR. HEMANN:** In answer to your question, Your Honor, I would anticipate an hour and a half. I'm going to aim for an hour and a half.

I'm a little concerned about the delay. The fact that they're going to have not heard anything for over a week.

**THE COURT:** Yeah.

**MR. HEMANN:** So, makes me feel like I might be well served to go a little bit --

**THE COURT:** Any issue as to the form of verdict, other than the one that you raised?

**MR. GETZ:** Only the issue of unanimity. And I'll try to file something this week.

**THE COURT:** Okay.

**MR. GETZ:** So the Court can see what I'm suggesting.

**THE COURT:** Well, you can file it, and I can always change the form of verdict. I'm not precluding you from -- not just filing; I'll consider it.

**MR. GETZ:** That's fine. Thanks.

**THE COURT:** Yeah. Okay. So, the government intends to be about an hour and a half. And the defense?

**MR. GETZ:** For Mr. Furminger, John Paul Passaglia, maximum 45 minutes. Brian Getz, 40 minutes.

**THE COURT:** Okay.

**MS. CAFFESE:** Hour and a half, Your Honor, on behalf

of Mr. Robles.

**THE COURT:** Pardon?

**MS. CAFFESE:** An hour and a half.

**THE COURT:** An hour and a half.

**MS. CAFFESE:** Well, let me put it this way.

**THE COURT:** That's an awfully long argument.

**MS. CAFFESE:** Let me say this. Not longer than an hour and a half. So, I'm just giving myself some latitude there, in case --

**THE COURT:** I just, as a general rule, would observe that sometimes the -- the shorter arguments are far more effective than the longer arguments.

I think that cuts both ways. I think both the defense and -- you know, you got some explaining to do. And, that's the Desi Arnaz "I Love Lucy" quote of the day. Desi: "You have some 'splaining to do."

And the longer it goes on, people have to wonder: What's happening? Why -- there must be a lot of evidence, or the evidence must be confusing, or whatever. Whatever.

I mean, from the defense point of view, when they say there is no evidence, then they get up and take an hour and a half to talk about why there's no evidence, I think they've lost their argument.

The prosecution point of view is -- you know, a long argument tends to get so much in the weeds that all sorts of

glaring omissions start to pop up, and inconsistencies and so forth.

Well, that's my view of argument, which is obviously prompted by self-interest.

**MR. GETZ:** I would offer this to the Court, just as to John Paul Passaglia and as to me: If at any time during your closing argument, no matter how far into it we are, if the Court is bored and the Court signals that, we will stop.

**THE COURT:** Okay.

**MR. GETZ:** We will stop.

**THE COURT:** I notice nobody else is making that -- that offer.

All right. So, I'll see you all at 8:30 on Monday.

Yes, Ms. Caffese?

**MS. CAFFESE:** Thank you, Your Honor.

If I may address my Rule 29 motion? I wasn't able to file the hard copy last night -- excuse me -- e-file my supplemental, but I did give the Court a copy there (Indicating).

But there are some -- the Court asked us to refer to the transcript, Mr. Sanchez's testimony.

**THE COURT:** Okay.

**MS. CAFFESE:** And, we did. And so --

**THE COURT:** I'll take a look at it. I've got four days to look at it. And it's right now under submission. The

motions were timely made.

**MS. CAFFESE:** All right.

**THE COURT:** And I'll take a look at it. And if it changes something, I'll let you know.

**MR. GETZ:** Also, just in case the Ninth Circuit ever has a look at my work, I do want to renew the motion to sever which we made originally early on in the case, and renewed repeatedly.

I think that a motion to sever has to be renewed at the conclusion of the government's case, or else it is waived. I do not intend a waiver. And I would like to renew that, to perfect my record.

**THE COURT:** Okay.

**MS. CAFFESE:** And --

**THE COURT:** And that motion is denied, but it's made by both parties.

**MS. CAFFESE:** Thank you.

**THE COURT:** And the Court deems that it was timely made.

**MR. GETZ:** Thank you.

**THE COURT:** All right. See you on Monday. Thank you very much.

**MR. HEMANN:** Thank you, Your Honor.

**MR. VILLAZOR:** Okay.

**MS. CAFFESE:** I guess we will get a clean copy of the

Court's instructions, obviously?

**THE COURT:** Pardon?

**MS. CAFFESE:** We'll get a clean copy of the Court's instructions?

**THE COURT:** Well, you will. I won't have to refile them -- maybe I will.

**THE LAW CLERK:** We file final jury instructions.

**MS. CAFFESE:** Thank you.

**THE COURT:** Absolutely.

(Conclusion of Proceedings)

**INDEX**



| | **PAGE** | **VOL.** |
|---|---|---|
| Defendant Furminger Rests | 1791 | 9 |
| Defendant Robles Rests | 1792 | 9 |

**CERTIFICATE OF REPORTER**

I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/ Belle Ball*

Tuesday, November 25, 2014

Belle Ball, CSR 8785, CRR, RDR