Volume 11

Pages 2094  —  2130

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE CHARLES R. BREYER, JUDGE

UNITED STATES OF AMERICA,          )
                                   )
            Plaintiff,             )
                                   )
   vs.                             )  NO. CR 14-102-CRB
                                   )
IAN FURMINGER and EDMOND ROBLES,   )
                                   )  San Francisco, California
            Defendants.            )  Wednesday
                                   )  December 3, 2014
_____   )  4:10 p.m.

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiff:          MELINDA HAAG
                        United States Attorney
                        450 Golden Gate Avenue
                        San Francisco, California  94102
                   BY:  JOHN HENRY HEMANN
                        RODNEY C. VILLAZOR
                        Assistant United States Attorneys


For Defendant Ian Furminger:
                        LAW OFFICES OF BRIAN H. GETZ
                        201 California Street
                        Suite 450
                        San Francisco, California  94111
                   BY:  BRIAN H. GETZ, ESQ.


Reported by:            BELLE BALL, CSR 8785, CRR, RDR
                        Official Reporter, U.S. District Court
 (Appearances continued, next page)

**APPEARANCES, CONTINUED:**

**For Defendant Edmond Robles:**
                      **LAW OFFICES OF TERESA CAFFESE**
                      **1000 Brannan Street**
                      **Suite 400**
                      **San Francisco, California  94103**
              **BY:  TERESA CAFFESE, ESQ.**
                      **HEATHER KELLY, ESQ.**

**Also Present:**
                      **Defendant Ian Furminger**
                      **Defendant Edmond Robles**
                      **Special Agent Melissa Patrick**
                      **Special Agent Sandra Flores**
                      **Dalida Vartanian**
                      **Alycee Lane**

```
1    WEDNESDAY, DECEMBER 3, 2014,                    4:10 P.M.

2                    P R O C E E D I N G S

3        (The following proceedings were held outside of the

4    presence of the Jury)

5            THE COURT:  Okay.

6            THE CLERK:  You may be seated.

7            THE COURT:  Let the -- no sound, no sound.

8            THE CLERK:  Oh.

9        (Sound system switched on)

10           THE COURT:  Let the Record reflect jurors are not

11   present.  But the parties are present, with counsel.

12       We received an instruction -- I mean, pardon me, a note

13   from the jury, which says:

14           "Regarding honest services, can the definition be

15           expounded upon?

16           "Is knowingly buying stolen goods while a city

17           official a denial of honest services?"

18       Those are the questions.  So, do we have any preliminary

19   thoughts?

20           MR. HEMANN:  So, we have a -- we have a suggestion,

21   Your Honor --

22           THE COURT:  Okay.

23           MR. HEMANN:  -- that I think we -- we think is

24   getting at the jurors' question.

25       And the suggestion would be in terms of expounding:  "If
```

1   Sergio Sanchez was providing stolen goods to a Defendant for

2   free or at a discount, in exchange for or as a reward for

3   official action or inaction, that could be a scheme under the

4   honest services wire fraud statutes."

5       And I think that the Court would need to say simply buying

6   stolen goods while a city official is not a denial of honest

7   services.

8       So I think -- our intention was to try to actually answer

9   their request for guidance in the first instance.

10      What we would be opposed to is an answer to the second

11  question without an answer to the first question.  Because

12  that would just leave them -- and the instruction that the

13  Court gave does answer both of these questions, I think in our

14  view, very clearly.

15      I mean, the instruction is as clear as it gets and it does

16  answer the second in the negative, although they have not,

17  obviously, worked through that and reached that conclusion on

18  their own.

19          **THE COURT:**  Mr. Getz?  How do you propose we respond

20  to this?

21          **MR. GETZ:**  I do agree with the government that -- to

22  the extent I thought I heard the answer "No" to the second

23  question, "Is knowingly buying stolen goods while a city

24  official a denial of honest services?"  I thought I heard a

25  "No," but I -- that might have been hearing what I wanted to

 1  hear.  But that's what I thought I heard.

 2      I would rather answer the first question because I heard

 3  something that really clanged on my ear.  The focus of the

 4  government's response was on the state of mind of Sergio

 5  Sanchez.

 6          **THE COURT:**  Right.

 7          **MR. GETZ:**  And that clashes with the Court's

 8  instruction which focused on the state of mind of

 9  Mr. Furminger.  So, whatever --

10          **MR. HEMANN:**  Fair enough.

11          **MR. GETZ:**  -- Sergio Sanchez thought or expected is

12  not germane to the question of what Mr. Furminger intended by

13  his actions, which is what the guilty/not guilty vote should

14  be based on.

15          **THE COURT:**  I agree.

16          **MR. HEMANN:**  That's a fair point.  I agree with that.

17          **THE COURT:**  All right, fine.  Let's start all over

18  again, because we should start all over again.

19      Starting with the second question, I think the answer is

20  not quite yes or no.  Because I think the correct answer would

21  be:  Knowingly buying stolen goods while a city official can

22  be a denial of honest services, provided that all other

23  elements of the -- of the -- of honest services -- requirement

24  of honest services has been met.

25      I'm not quite sure that's the right thing to say.  Because

PROCEEDINGS

```
 1    you can have a scheme, you can have a scheme of buying stolen
 2    goods -- I'm going to buy stolen goods, and I'm not going to
 3    arrest the guy for selling stolen goods.  Okay.  Let's say
 4    that's it.  Nothing more.  You know: You sell me stolen goods
 5    and I won't arrest you.  Simple.  Simple.
 6         Is that -- is that a denial of honest services?  Of course
 7    it is.  Would be, I would think -- that's the scheme.  The
 8    scheme is to purchase property from a fence, and not arresting
 9    him -- or obtaining property from a fence and not arresting
10    him, that is the classic honest services crime.  It is a
11    classic -- not "the," but it is a classic honest services
12    crime.  But, it has to be part of a scheme.
13         Two, there has would be a quid pro quo which is:  I'm not
14    going to arrest you or report you for doing the illegal act.
15         For example, a police officer can go out and buy heroin.
16    He has a drug habit.  Goes out and buys heroin.  He can do
17    that.  That's not a honest-services denial.  He can speed.  He
18    can murder; he can do any of these things.  He can do whatever
19    what any other citizen can do.  That is not a honest services.
20         The honest services is the quid pro quo.  In exchange for
21    doing something that is illegal, I'm going to -- I'm going to
22    not arrest you or not prosecute you or not bring you to the
23    attention of other authorities.  That's the honest services.
24         What a police officer has to do is -- is -- for this to be
25    a violation, I would think, is not -- is in exchange for the
```

PROCEEDINGS

1    illegal act --

2            **MR. HEMANN:**  Right.

3            **THE COURT:**  -- not doing something which he is

4    required by law to do.  I buy stolen property.  Is that a

5    denial of legal -- honest services?  No.  A police officer

6    buys stolen property, and the answer is:  It can be, if there

7    is a *quid pro quo*.

8            **MR. HEMANN:**  So that is why, I think, Mr. Getz is

9    correct that the subject of the instruction proposed by the

10   government was -- was misplaced.  The subject should be the

11   Defendant.

12       And so, perhaps the instruction should be:  If a Defendant

13   obtains stolen goods for free or at a discount in exchange,

14   the *quid pro quo*, for as or as reword for be an official

15   action or inaction, that could be a scheme, in quotes, under

16   the honest services wire fraud statutes.  Because --

17           **THE COURT:**  I think you have to say --

18           **MR. HEMANN:**  Provided the other elements are met.

19           **THE COURT:**  I don't know that I would just say

20   "scheme."  Could be -- could be considered, could be

21   considered as -- could be an element, could be considered as

22   part of a violation of the honest services act -- well, you

23   have to say "provided that all other elements of the offense

24   are shown."

25       You have to put that in somewhere.

PROCEEDINGS

```
 1          MR. HEMANN:  Sure.

 2          THE COURT:  Because standing alone, I mean, we're

 3   subsuming a couple of things.  Whether he's a duly -- constant

 4   police officer; number two, it happened in be San Francisco;

 5   number three, da, da, da, da, da.

 6      All those elements have to be met.  They have to find

 7   there was a fiduciary duty; they have to find a lot of things.

 8          MR. HEMANN:  Their question, though, goes to the

 9   scheme elements.  And as the Court defined --

10          THE COURT:  Well, used the term "honest services," so

11   you have to be careful.  Maybe you add another sentence.

12      Maybe you say, "Nevertheless, for the Defendant to be

13   convicted of this crime, it is essential that you find every

14   element of the offense, proven beyond a reasonable doubt.  All

15   elements of the offense..."

16          MR. HEMANN:  Or as the Court said, provided that all

17   elements to the offense are proved beyond a reasonable doubt.

18          THE COURT:  Yeah.  Okay.

19          MR. GETZ:  I have two thoughts.

20          THE COURT:  Yes.

21          MR. GETZ:  I think --

22          THE COURT:  The last two were pretty good.

23          MR. GETZ:  Even a blind sow finds an acorn now and

24   then.

25      The question is fairly narrow, is it not?
```

PROCEEDINGS

1              **THE COURT:**  Well, the first part is.

2              **MR. GETZ:**  No, I'm talking about "Is knowingly buying

3     stolen goods while a city official a denial of..."

4              **THE COURT:**  No, I think the answer is:  It can be.

5              **MR. HEMANN:**  I think that is a lawyer's answer, but

6     to answer the question directly you have to say "No" or "Not

7     necessarily."

8              **THE COURT:**  No.

9              **MR. HEMANN:**  Because you can't read the second

10    sentence without -- the second question without the context of

11    the first question.

12             **THE COURT:**  Yeah.  But I would be concerned -- I

13    would be concerned that -- let's say we just said no.  Let's

14    -- "No" goes back to them.

15        So they say "Oh, well, you know, that part of the proof

16    that he bought stolen goods and he decided not to prosecute,

17    not to arrest Sergio, then we can't even consider that.  The

18    Judge said no."

19        So you can't do it that way.

20             **MR. GETZ:**  But that brings me to my second point,

21    which is -- addresses what the Court just said.

22        I would ask the Court to think of how I structured this

23    cross-examination.  The whole theme of the cross-examination

24    on Sergio Sanchez was that he was performing all these good

25    deeds for the police, and getting to move this computer in,

```
 1   getting a stolen computer, turning the statue in, and all
 2   these things that he did.  And the reason that was the
 3   structure of the cross was we were trying to establish -- and
 4   we argued this in close -- that Sergio Sanchez was performing
 5   for the San Francisco Police as an informant, and returning
 6   things that benefited the public.
 7       So, here's why I say that now, because where Furminger
 8   buys something from him, if the intent and the goal of
 9   Furminger is to foment, cultivate and continue this
10   relationship with a proven informant who is continuing to
11   recover stolen property, then the answer has to be no here.
12           THE COURT:  I don't disagree with that.  I don't
13   disagree with that.  But I don't know that that -- that is not
14   what they are saying here.
15           MR. HEMANN:  We would ask the Court to consider the
16   way Mr. Villazor structured his direct examination.
17           THE COURT:  I'm not structuring the answer
18   necessarily to meet what I would say is, in a sense, a
19   hypothetical inference of what the evidence shows.  I mean,
20   what the evidence shows.
21       I think it is narrower than that.  I just --
22           MR. HEMANN:  We agree.  The first question is broad.
23   And the second question comes in the context of that broad
24   request in the first question.  I think that the -- the
25   instruction --
```

PROCEEDINGS

```
 1          THE COURT:  No, that's correct.  So what is your
 2  proposed --
 3          MR. HEMANN:  Well, I can hand it up.
 4          MS. CAFFESE:  May I weigh in, just --
 5          THE COURT:  Yeah, it might be helpful to get --
 6          MS. CAFFESE:  Yes, go ahead.
 7          THE COURT:  -- the prosecution's -- Okay.
 8      (Document handed up to the Court)
 9          THE COURT:  Okay.  "If a Defendant obtains stolen
10  goods for free and at a discount..."
11          MR. VILLAZOR:  "Or at a discount," sorry.
12          THE COURT:  Pardon?
13          MR. HEMANN:  "For free or at a discount."
14          THE COURT:  "...or at a discount in exchange for or
15  as a reward for official action..."
16          MR. HEMANN:  Or --
17          THE COURT:  "...or inaction, that could be a scheme
18  under the honest services wire fraud statute, provided that
19  all elements of the offense are proved beyond a reasonable
20  doubt."
21      Let me look at this a minute.
22      "If a Defendant obtains stolen goods for free, or at a
23  discount..."
24      I'm a little troubled by the word "discount" --
25          MR. VILLAZOR:  Well --
```

 1          **THE COURT:**  -- because they would say:  Well, what

 2   about a legitimate discount?  What if he sells a computer

 3   that's been used, 40 percent off?  You know.  And by the way,

 4   if you went in to Apple, or blah, blah, blah, it would also be

 5   40 percent off.

 6      I don't think you can use that word.  In other words, I

 7   think you have to say something like "below market" or "below

 8   its fair value."

 9      By the way, I don't know that there is any evidence of

10   what its fair value is.  So that's another problem that we're

11   getting into here.  Do you see the problems?

12      I'm just taking the "discount."  But let's move beyond

13   that.  Let's say "for free."

14          **MR. HEMANN:**  Right.

15          **THE COURT:**  Or "at a below-market cost" or something

16   like that.

17          **MR. GETZ:**  Yeah.

18          **THE COURT:**  In exchange for official -- well, I think

19   you say "for or as a reward," I don't know --

20          **MR. HEMANN:**  Well, "for" is a bribe, and "reward" is

21   a kickback, following the definition.

22          **THE COURT:**  Okay, "for or as a reward..."  The reward

23   is a gratuity, is that it?

24          **MR. HEMANN:**  Well, reward is --

25          **THE COURT:**  Okay, "for or as reward for official

PROCEEDINGS

```
 1   action or inaction, that could be a scheme under the honest
 2   services wire fraud statutes..."
 3       Well, it could be -- it's a scheme.  That's not the
 4   problem.  The problem is everything else that goes with it.
 5       But maybe, maybe -- maybe you say it could be a scheme
 6   under the wire -- under the honest services wire fraud
 7   statutes.
 8           MR. HEMANN:  The scheme is the exchange part of the
 9   crime.
10           THE COURT:  Yeah.
11           MR. HEMANN:  The quid pro quo is in the scheme
12   element.
13           THE COURT:  And I think you have to say, "And the
14   Defendant could be found guilty of honest services wire fraud
15   provided that all the elements of the offense..."  I mean, I
16   think you have to say something more.  I'm just thinking about
17   it.
18       Maybe it's -- it's not -- it's -- it's not that the scheme
19   meets all the elements of the offense, is it?  It's the honest
20   services wire fraud that needs --
21           MR. VILLAZOR:  The grammar could use a little bit of
22   work, I agree, Your Honor.  But we could put a period after --
23           THE COURT:  Could be a scheme under the honest --
24   period.
25           MR. HEMANN:  In order to find the Defendant guilty --
```

```
 1          THE COURT:  In order to find the Defendant guilty, it
 2   is -- you are -- you must find that all elements of the
 3   offense -- well, I could say "all elements of the offense as
 4   defined in Instruction Number blah, blah, blah."  But I would
 5   rather not.  "All elements of the offense proved beyond a
 6   reasonable doubt."
 7      So, that would read:  "If a Defendant obtains stolen goods
 8   for free or at a discount below its fair market value..."
 9          MR. HEMANN:  I don't -- I don't know if "fair market
10   value" --
11          THE COURT:  Well, do you want to say "substantially
12   free" or --
13          MR. HEMANN:  So, what the evidence was --
14          THE COURT:  Yeah, that he paid way less than what --
15          MR. HEMANN:  Less the street value because, for
16   example, for the Toshiba computer that Mr. Robles obtained,
17   Mr. Sanchez said "The value is $600, you're getting it for
18   $200."
19      There is an email with regard to something that
20   Mr. Furminger got, and I don't remember which item, and it
21   says "For you very chea."
22      And I don't know how to articulate that.  I'm struggling
23   with how to articulate that in a way that is not directly tied
24   a piece of evidence.  But, "discount" is, I guess, as close as
25   I got to that point.  You can say "for a price that other
```

1   people didn't get," but that becomes very cumbersome.

2            **THE COURT:**  Well, but that's really saying below fair

3   market value.

4            **MR. HEMANN:**  It is.  I mean --

5            **THE COURT:**  The word -- you can't use "discount"

6   anymore because it's all sold at a discount.

7            **MR. HEMANN:**  Maybe "street market value"?

8            **THE COURT:**  Discounts on supplies, discounts --

9            **MR. VILLAZOR:**  How about "street market value"?

10           **THE COURT:**  Well, I don't know what the street market

11  value is.  Below street market value?  You didn't have any

12  evidence of what the street market value was in the case.

13  Failure of proof.

14           **MR. HEMANN:**  Well, but the proof was "For you, chea."

15           **MS. CAFFESE:**  May I, Your Honor?

16           **THE COURT:**  Well, that's -- yeah.

17           **MR. HEMANN:**  You could say "cheap," "for free or

18  cheap."

19           **THE COURT:**  Okay, but "for you, cheap," it's a

20  reasonable inference that a person hears the words "for you

21  cheap," believes that that will be beneath fair market value.

22           **MR. HEMANN:**  We don't object to the term "free market

23  value."

24           **THE COURT:**  "Fair market value."

25           **MR. HEMANN:**  I'm sorry.

PROCEEDINGS

```
 1              MS. CAFFESE:  Actually, I would object and I may, if
 2      I have any --
 3              THE COURT:  I promise you, I've got until 6:00.  And
 4      they've left.  So, I want to get this thing straight now.
 5          "Or below..." well, rather than saying "below fair market
 6      value," I could say "below its value."
 7              MR. HEMANN:  Yes, that's better.
 8              THE COURT:  "Fair market value" --
 9              MR. HEMANN:  Yes.
10              THE COURT:  I think that's a better way, or "below
11      its value."
12          Okay.  So, Ms. Caffese.
13              MS. CAFFESE:  Thank you.
14              THE COURT:  I just want to read it to you and then
15      you can comment on it; okay?
16              MS. CAFFESE:  Yes.
17              THE COURT:  "If a Defendant obtains stolen goods for
18      free or below its value, in exchange for or as a reward for
19      official action or inaction, that could be a scheme under the
20      honest services wire fraud statutes.  In order to find the
21      Defendant guilty, however..." I'll put a "however" there
22      because that's always helpful.
23          "...however, you must find that all elements of the
24      offense have been proved..."  Proven?  Proved.  Proved?
25      Proven.  "...have been proven beyond a reasonable doubt."
```

 1      Okay, Ms. Caffese.

 2          **MS. CAFFESE:**  Thank you, Your Honor.  I do have a

 3  problem with the language of "discount."  And that is for this

 4  reason.

 5          **THE COURT:**  I took it out.

 6          **MS. CAFFESE:**  Well, "below market value," language

 7  that --

 8          **THE COURT:**  No, wait.  "Below its value."

 9          **MS. CAFFESE:**  But you can purchase items through

10  Craigslist below its value.  You can purchase --

11          **THE COURT:**  No, you can't.  No, you can't.

12          **MS. CAFFESE:**  Well --

13          **THE COURT:**  Because that is the market.

14          **MS. CAFFESE:**  I think that is somewhat misleading.

15      So my proposal is that the Court simply say that "It does

16  not, in and of itself, or by itself constitute a denial of

17  honest services.  All of the elements of the charge must be

18  proven beyond a reasonable doubt."

19      And this avoids highlighting --

20          **THE COURT:**  Okay, let's look at it.  So you would

21  say, you would say knowingly buying stolen property while a

22  city official in and of itself... this may be a good way --

23  ...in and of itself is not sufficient of -- is not sufficient

24  to establish -- or prove or whatever -- to establish an

25  honest-services fraud.  However, it is one factor, it can be

1   -- it can be one factor -- it can be one -- it can be

2   considered by you in connection -- or along with all the

3   elements -- I don't know --

4           MR. GETZ:   All the surrounding circumstances.

5           MR. HEMANN:   So, one possible way to do it,

6   Your Honor, is to give this -- the first part that Ms. Caffese

7   suggested, put a period at the end --

8           THE COURT:   I haven't finished writing out her

9   suggestion.

10          MR. HEMANN:   I think you were adding things that she

11  didn't suggest.  But --

12          THE COURT:   Okay, "Knowingly buying stolen property

13  while a city official in and of itself is not sufficient to

14  establish an honest-services fraud," period.

15          MR. HEMANN:   Period.  "However," and then give the

16  instruction the government proposed on the other side the

17  paper there.

18          THE COURT:   "However, if a Defendant obtains stolen

19  goods for free or below value in exchange for or as a result

20  of an official action or inaction, that could be a scheme

21  under the honest services wire fraud.  In order to find the

22  Defendant guilty you must find that all elements of the

23  offense have been proven beyond a reasonable doubt."

24          MR. GETZ:   The problem with that is it highlights an

25  argument they made in closing argument that is favorable to

 1  them, and it ignores the arguments we made.  That selects an

 2  argument that supports their position in the portion after

 3  "However." And it's got to be more even-handed than that.

 4       **MR. HEMANN:**  It doesn't --

 5       **MR. GETZ:**  It has to be along the lines of --

 6       **THE COURT:**  Well, it has to be -- you have to respond

 7  to the question.  They're responding to the question.

 8       **MR. GETZ:**  The Court did respond to the question, in

 9  the first part of the answer.  That is -- that's the best --

10  that is the closest thing to a no.  Because, it doesn't say

11  "It could be, if..." which is responding with a yes.

12      We think that the answer should track the narrowest

13  narrowness of the question, which would compel a no.  Okay,

14  the Court said the Court didn't like the no because that may

15  mislead them.  Fine.  Don't give them a no.  But then give

16  them --

17       **THE COURT:**  Well, okay.  Maybe it should say this.

18  You have a point.  Let me see if I'm addressing it.

19      Answer:  "Knowingly buying stolen property while a city

20  official, in and of itself, is not sufficient to establish an

21  honest-services fraud."

22       **MR. GETZ:**  So far, so good.

23       **THE COURT:**  Great.  "In order to establish an

24  honest-services fraud, each and every element of the offense

25  as set forth in..." -- and I could even say "instructions on

 1   Page 6" or whatever it is "...must be established beyond a

 2   reasonable doubt."

 3            **MR. GETZ:**  We like that.

 4            **MS. CAFFESE:**  Yes.  I would agree with that.

 5            **MR. HEMANN:**  We totally object to that, because

 6   you're then -- then you're -- you're doing exactly the

 7   opposite of what -- what you're now doing is highlighting the

 8   defense argument by answering only the second question that

 9   the jury -- the jury -- if their -- if what they were stuck on

10   is this Question No. 2, they would have written either only

11   this question, or they would have written it first.

12            **THE COURT:**  Okay, so, what if -- let's take the first

13   part.  Let's say the first, I get the first question.  Let's

14   say -- they didn't have Question No. 2.  Just Question No. 1.

15      Do you know what I would write back?

16            **MR. HEMANN:**  "It's in the instructions."

17            **THE COURT:**  Yeah.  I would write back, "No.  It's in

18   the instructions."

19            **MR. HEMANN:**  Correct.  But Question No. 2 can't be

20   read in the absence here of Question No. 1.

21      With all due respect to the Supreme Court and Congress and

22   everyone who weighs in on the services fraud without the

23   inconvenience of a jury, it's complicated.  And --

24            **THE COURT:**  But what's wrong with what they

25   suggested?

 1            **MR. HEMANN:**  Because you are then highlighting their

 2   argument.

 3            **THE COURT:**  What is their argument?

 4            **MS. CAFFESE:**  No, because, Judge --

 5            **THE COURT:**  No.  I'm not saying any -- about any

 6   argument here.  All I'm saying is the answer to the first

 7   question -- the first question says:  Can you expound upon it?

 8       To which I would say, in the normal course:  Please review

 9   Instruction 6a.  Okay, whatever number it is.  Special

10   Instruction -- no, that's -- I would say, "Page 7, Counts 3 or

11   4, honest services, wire fraud."

12       So I would say, "Please refer to Page 7" -- "Page 7 and

13   8," or maybe "7" -- no.  "Please refer to..."

14            **MR. HEMANN:**  Pages 8 and 9.

15            **THE COURT:**  "...Page 7, 8 and 9 with respect to

16   honest services wire fraud."

17       Okay.  Then I would go on to say:  As to your specific

18   question, the answer is no.  The answer is no, in and of

19   itself.  However -- however -- it can be considered -- it can

20   be considered, with respect to all of the elements --

21            **MR. GETZ:**  What the Court wrote is exactly what we

22   would like.

23            **MS. CAFFESE:**  Yes.

24            **MR. GETZ:**  -- because that --

25            **THE COURT:**  I forgot what I said.  "Knowingly buying

PROCEEDINGS

 1   stolen property...in and of itself...However, it can be

 2   considered by you along with all the elements of the offense,

 3   which are set forth on Page 7, 8 and 9 of your instructions.

 4        Okay, let's see how that works.  I don't know why you are

 5   so apoplectic about it this.

 6             MR. HEMANN:  Well, I'll tell you in a moment.

 7             THE COURT:  Okay.  Knowingly buying stolen property

 8   while a city official in and, in and of itself is not

 9   sufficient -- "in and of itself" is the key word here.  In and

10   of itself is not sufficient to establish an honest services

11   crime.  However it can be considered by you along with all of

12   the elements of the offense which are set forth on Pages 7, 8

13   and 9 of your instructions.  All of the elements of the

14   offense which must be proven.

15        In other words I'm telling them, you can consider this,

16   you can consider -- you can consider it but you have to

17   consider it in the context of everything else.  It's like that

18   old thing about what people say about, you know, facts and

19   circumstances surrounding the conduct, while you may strike a

20   particular, you know, incriminatory statement, you may

21   consider all the facts and circumstances surrounding why that

22   statement was made or something like that.

23             MR. HEMANN:  How about --

24             THE COURT:  Yeah, go ahead.

25             MR. HEMANN:  "However, if it was in exchange for

 1   official action or inaction, then you may consider it."

 2        **THE COURT:**  No, and I'll tell you, because that is

 3   making their argument.  I mean, that is making your argument.

 4   And, and, and I don't think I should single it out.

 5     I think it's appropriate at this point to tell them they

 6   can consider it.  They can consider it, along with all

 7   evidence relating to the elements of the offense as set forth

 8   or relating to -- the elements as set forth on Pages 7, 8 and

 9   9 of the instruction.

10     So it would read "However, it can be considered by you

11   allege with all the evidence..."

12        **MR. HEMANN:**  If the Court were to flip the clauses it

13   would be okay.  Because --

14        **THE COURT:**  Okay.  Have you given it to me the way

15   you think it would be all right?

16        **MR. HEMANN:**  The way we thought at the beginning was

17   the way we thought but in this context it would be "You may

18   consider amongst all of the..."

19        **THE COURT:**  Wait, "You may consider..."

20        **MR. HEMANN:**  "...circumstances" or "all of the

21   elements...".

22        **THE COURT:**  You may consider what?

23        **MR. HEMANN:**  "...that the Defendants knowingly bought

24   stolen..." I'm not -- I don't have it in front of me.  But,

25   but if -- if the Court's instruction is that they may consider

1    it, then that's the first thing that the Court should say.

2        However, --

3            **THE COURT:**  Okay, okay.

4            **MR. HEMANN:**  -- alone, it's not enough.

5            **THE COURT:**  That may be all right.

6        "You may consider..."

7            **MR. HEMANN:**  "Whether" -- "but alone, that is not

8    enough."  I think that tracks the -- the way the jurors are

9    asking it.

10           **THE COURT:**  "You may consider" -- okay.  "You may

11   consider..."  What if I say this?  Okay, I'm going to give you

12   another one.

13       You can tell the jury they have to meet on Saturday.

14       Okay.  See, see if this works:  "The fact that a Defendant

15   bought stolen goods while a city official, in and of itself,

16   is not sufficient to establish a wire services fraud.

17   However, that evidence may be considered by you in determining

18   whether each and every element of the wire services fraud as

19   set forth on Pages 7 through 9 of these instructions has been

20   proven beyond a reasonable doubt."

21           **MR. GETZ:**  That's a green light for Mr. Furminger.

22   We say give it to them.

23       (Reporter interruption)

24           **THE COURT:**  Oh, honest-services fraud.  That's right.

25   Good.  I meant honest-services fraud, I meant honest services.

 1    Okay.  I mean, I think that's absolutely neutral.

 2       I'm trying -- I'm trying to be neutral in this thing, not

 3    give anybody's argument.  And I think you raise a good point.

 4    And, that's the way it's going to be unless you can convince

 5    me that I'm wrong.

 6       Oh, Ms. Caffese go right ahead.

 7          **MS. CAFFESE:**  I'm pretty much satisfied.  But my

 8    concern, though, Judge, is the fact that there's the

 9    suggestion or that there's the finding that the property was

10    knowingly stolen.  I mean, that really is a question for the

11    jury.

12       And the way that the government --

13          **THE COURT:**  (Inaudible)  They say it's knowingly

14    buying stolen goods.  I don't know.

15          **MS. CAFFESE:**  I'm concerned a little bit with the

16    speculation that we're engaged in here, in trying to identify

17    what the jury is thinking.  And that's why I think the more

18    general response is the more appropriate one.

19          **THE COURT:**  Which is?

20          **MS. CAFFESE:**  Which is essentially -- which is the

21    one that I read to you.

22          **THE COURT:**  I mean, I have to take their question as

23    they give it to me.  They're saying -- if they don't find --

24          **MR. HEMANN:**  Implicit in their question is that one

25    or more of the jurors is sitting back there, saying, "I think

 1   that the property was knowingly purchased.  If we conclude

 2   that, is that a violation..."

 3           **THE COURT:**  Purchase --

 4           **MR. HEMANN:**  Stolen property was knowingly purchased

 5   by the Defendants, or knowingly taken by the Defendants.  It's

 6   implicit in their question that at least one of them has

 7   reached that conclusion, and wonders whether that, alone, is

 8   enough.

 9           **THE COURT:**  Well, I might have to change this.  You

10   raise a good point.  I think you have to say the fact that a

11   Defendant knowingly bought stolen goods.  In other words, it

12   couldn't be inadvertent.

13           **MR. HEMANN:**  Correct.

14           **THE COURT:**  So I think I have to -- that should help.

15   I -- I guess I could change it, "If you find that a Defendant

16   bought stolen..." "...knowingly bought stolen goods while a

17   city official, that fact, in and of itself..."

18       "That fact"?  Or "that finding"?  I don't care.

19       "...that fact, that finding, in and of itself is not

20   sufficient to establish honest-services fraud.  However, that

21   evidence may be considered by you in determining whether each

22   and every element of honest-services fraud as set forth on

23   Pages 7 through 9 of these instructions has been proven beyond

24   a reasonable doubt."

25           **MR. GETZ:**  We think the predecessor answer that the

PROCEEDINGS

 1   Court proposed is more directly answering the question.

 2            THE COURT:  You mean, I shouldn't say "the fact

 3   that"?  I should say -- I should simply say "If" -- I mean,

 4   shouldn't I say "If you find that a Defendant knowingly bought

 5   stolen goods..."?

 6            MR. GETZ:  No, I think the Court's other --

 7            THE COURT:  Well, what was that, what did I say?

 8            MR. GETZ:  The predecessor answer that Mr. Furminger

 9   greenlighted was the format we suggest, because it was

10   shorter.  I can't recite it, but it's available if the Court

11   would like to hear it.

12       I would call upon Ms. Ball to --

13            THE COURT:  Can you go back and see what I said just

14   before?

15       (A portion of the Record read back by the Reporter)

16            THE COURT:  So the only -- is this all right with

17   you?

18            MR. GETZ:  That's got the Ninth Circuit written all

19   over it.

20            THE COURT:  Okay, yeah, great.  Which part?

21       I'm going to add the word "knowingly" because I think in

22   fairness to the defense, you want that.  Do you see another --

23   inadvertently buy stolen goods.

24       I may -- not knowing they were stolen goods, I can't

25   believe that that would be a crime.  I have to knowingly buy

PROCEEDINGS

```
1    -- I mean, given their instruction --

2            MS. CAFFESE:  Their question?

3            THE COURT:  Their question, rather, I think you want

4    the word "knowingly" in there.

5            MS. CAFFESE:  On behalf of Mr. Robles --

6            THE COURT:  He says -- the jury says it is knowingly.

7    So I want to put it back in.  You can't complain about that.

8    You can complain about a lot of things, but you can't complain

9    that I take the jury's heightened proof requirement and give

10   it back to them.

11      Anyway, I'm going to do it and you can --

12           MR. HEMANN:  So here's --

13           THE COURT:  Your complaint.

14           MR. HEMANN:  Here's my complaint.  So, my complaint

15   is that I believe that the Court is now highlighting Question

16   No. 2, without answering Question No. 1.

17      I think the -- the Court's giving the Defendants' answer

18   to No. 2, and then it's No. 1, saying, "Just go back and read

19   my instructions," because --

20           THE COURT:  But I would have done that anyway.

21           MR. HEMANN:  If Question No. 2 hadn't been there.

22           THE COURT:  Right.  So I'm trying to address Question

23   No. 2 in the context -- Question No. 1 in the context of

24   Question No. 2.

25           MR. HEMANN:  So, perhaps, and this extent -- this is
```

 1    going to sound more complicated than it is.  The --

 2             THE COURT:  That's not good.

 3             MR. HEMANN:  So, bear with me.  So, the section --

 4             THE COURT:  That's like "Wagner's music is better

 5    than it sounds."

 6             MR. HEMANN:  Yes.

 7             THE COURT:  Right.

 8             MR. HEMANN:  This may be exactly that.  The -- the

 9    portion of the instruction that I believe they are focused on

10    is on Page 8.  And it is at the bottom, after the seventh

11    element.  And it starts "Bribery and kickbacks involve the

12    exchange of a thing or things..."

13             THE COURT:  Page 7, isn't it?

14             MR. HEMANN:  That's my Page 7.

15       (Off-the-Record discussion between counsel)

16             MR. HEMANN:  Oh, this is the earlier.  I think the

17    language is the same.

18             THE COURT:  All right.

19             MR. HEMANN:  But it's:

20             "Bribery and kickbacks involve exchange of a thing or

21             things of value for official action..."

22       (Reporter interruption)

23             MR. HEMANN:  (As read)

24             "Bribery and kickbacks involve the exchange of a

25             thing or things of value for official action by a

1              public official.  Undisclosed conflicts of interests

2              or undisclosed self dealing is not sufficient.  The

3              Defendant must have intended to trade an official

4              action for items of value."

5         Period.  Okay.

6         "Therefore..." and then start what the Court read, the

7    green -- the Furminger green light.  And then, finish.

8    Because then I think the Court is expounding upon the

9    question.

10        So you go through, and then say the -- I think that might

11   more directly answer what the jury is asking.

12             **MS. CAFFESE:**  And that requires us to speculate,

13   Your Honor.

14             **MR. HEMANN:**  You don't think --

15             **THE COURT:**  Thank you.  That's very helpful.

16        Okay.  Here we go: "The fact that a Defendant knowingly

17   bought stolen goods while a city official is not, in and of

18   itself, sufficient to establish honest services wire fraud.

19   However, that evidence may be considered by you in determining

20   whether each and every element of..." I can say "...the crime

21   as set forth in Pages 7, 8, and 9 of your instructions has

22   been proven beyond a reasonable doubt."

23             **MR. HEMANN:**  Allow me to take one more crack.  It

24   will be my last crack at this.

25        The concern I've got is they're not asking about each and

PROCEEDINGS

```
 1   every element.  They are asking about the scheme element.
 2   Their question is directed at the scheme element.  And I'm
 3   concerned that the focus is -- you are saying no to their
 4   question about the scheme element, and then saying:  Go
 5   consider all the rest of them.
 6        So perhaps it could be, whether each and every element,
 7   whether there was --
 8            THE COURT:  Okay, I could say "whether the crime as
 9   set forth on Pages 7, 8, 9 of your instructions has been
10   proven beyond a reasonable doubt."  I don't have to say "each
11   and every" here, because that is an argument.
12        "Beyond a reasonable doubt" is actually an argument.
13            MR. GETZ:  But I think the Ninth Circuit has
14   condemned the kind of selection that the government is asking
15   the Court to make as to what the jury meant, beyond the four
16   corners of this question.
17        And the government did that when it said "I think that the
18   jury's talking about Page 7" when there isn't any word
19   "scheme" in that question.
20        We think just the opposite:  That the whole thing is about
21   Lines 19 to 24 on the government -- on the Court's final
22   version, Page 8 of the instructions.  And that has nothing to
23   do with Page 7.  So, I think --
24        (Off-the-Record discussion between counsel)
25            MR. HEMANN:  I was using the wrong, wrong page.
```

PROCEEDINGS

```
 1          THE COURT:  I'm sorry; what lines are you talking

 2   about?

 3          MR. GETZ:  On the Court's final version, the most

 4   recent e-filed, I'm looking at Page 8, Line 15 to 24.  And --

 5          THE COURT:  Well, but I tell them to look at it.  I

 6   tell them, "the crime as set forth on Pages 7, 8 and 9."

 7          MR. GETZ:  That part, I like.  But where the

 8   government focuses on the word "scheme," and the word "scheme"

 9   is --

10          THE COURT:  I'm not using the word "scheme."  I never

11   use the word "scheme."

12          MR. GETZ:  I'm suggesting -- we're asking the Court

13   to do the one that was immediately before the green light

14   reference.

15          THE COURT:  That's fine.  The only question is --

16   that's fine.  That's what I've written here, in my view.

17       And the only question in my mind is whether I have to or

18   should say "each and every element of the crime."  Whether I

19   should simply say "by you in determining whether the crime as

20   set forth."  Rather than say "each and every element of the

21   crime."

22          MR. GETZ:  We ask for "each and every element"

23   because that is consistent with the instructions the Ninth

24   Circuit has given us.

25          THE COURT:  That is true with every crime.
```

PROCEEDINGS

1           **MR. HEMANN:**  They're not asking about each and every

2    element.

3           **MS. CAFFESE:**  How do we know that?  We are engaging

4    in speculation when we're trying to figure out what the jury

5    is asking for.  I think the most appropriate response is what

6    the Court was going to give them.

7           **MR. HEMANN:**  I agree with Ms. Caffese; we're engaging

8    in speculation.  So, I think that because we are engaging in

9    speculation, perhaps the instruction the Court should give

10   tomorrow morning is: "This question is answered by my

11   instructions; go back and read them."

12          **THE COURT:**  Oh, no, I'm not going to --

13          **MR. HEMANN:**  And then if they're still stuck, they'll

14   ask a better question.  Because it is answered by the

15   instruction.

16      It's answered by the instruction that says (As read):

17          "Undisclosed conflicts of interests or undisclosed

18          self dealing is not sufficient.  The Defendant must

19          have intended to trade an official action for items

20          of value."

21          **THE COURT:**  The problem is -- the question is "Is

22   knowingly buying stolen goods while a city official denial of

23   honest services?"

24      And the answer is: Yes, it could be, if there's --

25   everything else is proven.

 1          **MR. HEMANN:**  If the Court says that, we agree.  Yes,

 2   it could be.

 3          **THE COURT:**  But I said it in the negative.  I said

 4   it, in and of itself, is not -- is not a crime.  But it can be

 5   considered by you in your consideration of the crime itself.

 6      I could take out "each and every element" because I think

 7   that is argument.  So in other words, it would read "However,

 8   that evidence may be considered by you in determining whether

 9   the crime as set forth in Pages 7, 8 and 9 of your instruction

10   has been proved beyond a reasonable doubt."

11          **MR. HEMANN:**  If the Court began the instruction with

12   "It could be," period.

13          **THE COURT:**  I'm not going to say that.

14          **MR. HEMANN:**  I thought the Court just said that was

15   the answer.  The answer is it could be.

16          **THE COURT:**  It could be, as part.  It could not be,

17   standing alone.

18          **MR. HEMANN:**  Agreed.

19          **THE COURT:**  And that's all I'm saying here.  "In and

20   of itself" means standing alone.

21          **MR. HEMANN:**  But.

22          **THE COURT:**  Then I go on to say -- I go on to say, it

23   may be considered.

24          **MR. HEMANN:**  I think that gets -- my firm belief is

25   that that gets completely lost in -- it could be considered

```
1   along with a whole list of other things, look at Pages 7

2   through 9.  If the Court said it could be but not standing

3   alone --

4          MR. GETZ:  No.

5          MR. HEMANN:  -- that's clear.  And the reason that

6   Mr. Getz doesn't like it is because it's clear, that way.  And

7   it's crystal clear that it could be.  Which I think has been

8   the Court's reaction to this --

9          THE COURT:  Okay, so not standing alone.  Someone

10  says, "Well, what does that mean?"  They say, "Well, what does

11  that mean?"

12      And the answer to that really is, "Well, that means that

13  it's evidence, and it could be considered."

14      I think this is --

15         MR. HEMANN:  If the Court says it could be evidence,

16  then --

17         THE COURT:  I'm trying to figure out what's wrong

18  with my instruction, not whether it's brilliant.  I'm just

19  trying to figure out:  Have I said something that's wrong?

20  Have I said something that's not appropriate in the law?

21      They seem to suggest -- and I don't know which way it

22  goes.  They're either asking the question:  Is this enough?

23  Knowingly buying stolen property while a cop, is that enough?

24  Or they're saying:  You need it.

25      I don't know what they're saying.
```

1          MR. HEMANN:  I don't, either, Your Honor.  And I

2   think we're -- so the Court's answer that it could be enough,

3   as long as you find all of the other elements, --

4          THE COURT:  Yeah.

5          MR. HEMANN:  -- is fine.

6          THE COURT:  That's what I just said.

7          MR. HEMANN:  But I think that the way the Court

8   starts it, it sounds to me like the Court is saying "No,

9   unless..."

10         THE COURT:  I'm saying not, in and of itself -- I'm

11  mean, I'm sorry; I didn't invent this language.

12         MR. HEMANN:  I know.

13         THE COURT:  I -- I mean, you've got to use words in

14  the English language, and hope that they communicate the same

15  meaning to people that -- I mean, its simple form that you

16  would intend.

17      What I intend to tell them is in and of itself, standing

18  alone, without anything else, no.  It is not a crime, an

19  honest services wire fraud crime, for a police officer to

20  knowingly buy stolen property or knowingly -- I mean, it's not

21  wire -- I mean, not honest-services fraud; it's something

22  else.  It's receiving stolen property.  496.  You know.  Or

23  buying dope is 11355(a), or whatever it is.

24      I mean, yeah, there's crime, but not this crime.  They're

25  talking about this crime.

PROCEEDINGS

1    **MR. GETZ:**  We're in the amen corner on that.

2    **THE COURT:**  Amen.  Amen.  Okay, that's what I'm going

3 to write.  I'm going to write -- I've taken out "each and

4 every element" because it's argumentative.

5    I'm leaving in the unreasonable (Inaudible) -- Mr. Getz

6 has given you a green light, so I don't -- if I took it out it

7 would become an amber light.  And, it's also ten after 5:00.

8 So, those are all the reasons -- the considered reasons I'm

9 going to give it the way I'm giving it.

10    I'll write it and send it to the jury, and they'll have it

11 first thing in the morning, fresh.

12    **MR. GETZ:**  Submitted.

13    **MS. CAFFESE:**  Thank you, Your Honor.

14    **THE COURT:**  You don't have to say "Submitted."  I've

15 got it --

16    **MR. HEMANN:**  No, I --

17    **THE COURT:**  You don't have to say --

18    **MR. HEMANN:**  It's all good, it's all good.  Thank

19 you, Your Honor.

20    **THE COURT:**  It's all good.  Thank you.  Everybody go

21 home.

22    (Conclusion of proceedings)

23

24

25

**CERTIFICATE OF REPORTERS**

I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*Belle Ball*

/s/  *Belle Ball*_____

Thursday, December 4, 2014

Belle Ball, CSR 8785, CRR, RDR