MELINDA HAAG (CABN 132612)
United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

JOHN H. HEMANN (CABN 165823)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    John.Hemann@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>IAN FURMINGER and EDMOND ROBLES,<br><br>    Defendant. | GOVERNMENT'S RESPONSE TO DEFENDANTS' MEMORANDA REGARDING THE SENTENCING GUIDELINE CALCULATION<br><br>Date: February 18, 2015<br>Time: 10:00 am |

The United States submits this omnibus response to the briefs filed by defendants Furminger and Robles regarding the proper calculation of the Sentencing Guidelines. The Presentence Reports (PSRs) prepared by the Probation Office as to Furminger and Robles properly calculated the appropriate offense level, 28 for both defendants.

**A. Grouping (Furminger and Robles)**

Both Furminger and Robles argue that the Probation Office should have grouped Counts 1, 2, and 6 with Count 5. Group 1, according to the PSR, included the honest services wire fraud and theft from a federally funded program counts (Counts 1, 2, and 6), in which the victims were the City and County of San Francisco and the San Francisco Police Department. Group 2, according to the PSR, was

the conspiracy against civil rights count (Count 5), in which the victims were the individuals who had their property taken.

The government agrees with the Probation Office that these two groups did not involve the same harm pursuant to USSG § 3D1.2, though the conduct did involved a single continuous course of behavior.  The harm caused by theft of money and property from a government employer is qualitatively different than the violation of individual civil rights; the former is a breach of the employer's trust, the latter is both a violation of citizens' personal security and a breach of the social contract.

Moreover, the guidelines applicable to the two groups of offenses are measured quite differently and do not rely on the same metrics.  The Guidelines calculation for the theft offenses (Group 1) rely primarily on the total amount of money stolen by the defendants.  The calculation for the civil rights offense (Group 2) relies primarily on the nature of the intrusion (burglary).   Because these metrics are different, the offenses do not group.[1]

In this case, however, this argument is academic, as there is no increase in offense level as a result of the operation of the grouping rules.  See Furminger PSR ¶ 46 & Robles PSR ¶ 48.

**B.  Minor Role Adjustment (Furminger)**

Furminger contends that he is entitled to a minor role adjustment under USSG § 3B1.2(b).  The government disagrees.

Furminger was neither "substantially less culpable than the average participant" nor convicted of a "significantly less serious offense."  USSG § 3B1.2, cmt. 3.  He not only was Robles's and Vargas's supervisor who participated in and was convicted of being part of the civil rights and theft conspiracies, he was a direct participant in a number of the more egregious violations, including the thefts from the home in Newark (Furminger PSR ¶ 17), the theft from Andrew Byrd (Furminger PSR ¶ 20), and the theft from Crystal Ponzer (Furminger PSR ¶ 22).  Both Reynaldo Vargas and Cesar Hernandez testified that Furminger was knowledgeable about and participated in the conspiracy throughout its operation.

The minor role adjustment is intended to cover participants in criminal activity who are "less

---

[1] It is true, of course, that if the Court agrees with the defendants that the Probation Office was wrong to apply the burglary guideline, this part of the analysis would change.

1    culpable than most other participants, but whose role could not be described as minimal."  USSG

2    § 3B1.2, cmt. 5.  The mere fact that Furminger did not participate with Vargas and Robles in every one

3    of the thefts does not make him, particularly as their supervisor, less culpable than they are.

4

5    **C.  Base Offense Level Selection (Furminger)**

6          With the regard to the civil rights conspiracy (Count 5), Furminger contends that the Probation

7    Office erred in selecting and applying the offense level for burglary, pursuant to USSG § 2H1.1(a)(1)

8    and USSG § 2B2.1(a)(1).  Furminger does not contest the applicability of the burglary guideline based

9    on the facts adduced at trial and set forth in the PSR, but instead contends that because burglary was not

10    charged in the indictment, the burglary guideline cannot be used.  This is not correct.

11          Furminger relies on *United States v. McEnry*, 659 F.3d 893, 899 (9th Cir. 2011).  In *McEnry*, the

12    court of appeals held that in selecting the applicable Chapter Two guideline, the sentencing court must

13    follow the Statutory Index or, if the offense of conviction is not listed in the Statutory Index, USSG

14    § 2X5.1.  *Id.*  "[I]t is not the defendant's underlying relevant conduct," the Ninth Circuit explained," but

15    the crime of conviction, that governs the selection of the appropriate guideline section."  *Id.* at 897.

16          The Probation Office correctly followed this approach.  The Statutory Index identifies USSG

17    §§ 2H1.1, 2H2.1, and 2H4.1 as the appropriate Chapter Two guidelines for a conviction under 18 U.S.C.

18    § 241.  The Probation Office selected USSG § 2H1.1, to which defendant does not object.  The base

19    offense level under § 2H1.1 is the "greatest" of the four options listed in subsection (a), the first of

20    which is "the offense level from the offense guideline applicable to any underlying offense."  The

21    comment defines this as "the offense guideline applicable to *any conduct established* by the offense of

22    conviction that constitutes an offense under federal, state, or local law . . . ."  USSG § 2H1.1, cmt. 1

23    (emphasis added).  Accordingly, under § 2H1.1, it is appropriate for the Court to look to the guideline

24    most applicable to the conduct established by the facts.  This is precisely what the Probation Office did.

25          There is not, as Furminger, any requirement that burglary be charged in the Indictment in order

26    for the first subsection of § 2H1.1(a) to be used.  The requirement, as described in *McEnry*, is merely for

27    the Court to refer to the Statutory Index to determine the proper starting place in the Guidelines.

28

**D.  Theft Versus Burglary (Robles)**

Robles argues that the Court should apply the base offense level for theft rather than for burglary, which would result in a total offense level of 22 rather than 28.  He contends, pointing only to the incident involving theft of property from the Newark residence, that there is no support for the conclusion that defendants committed burglary.  He is incorrect.

Under California law, burglary has two elements:  (1) unlawful entry and (2) the intent to commit theft (either felony or misdemeanor) or any other felony. Cal Penal Code §§ 459, 490a; *People v. Montoya,* 7 Cal.4th 1027, 1041 & n. 8 (1994).  The intent to commit the underlying theft or felony must exist at the time of entry.  *People v. Holt*, 15 Cal.4th 619, 699 (1997).

The evidence at trial proved by any standard that the defendants unlawfully entered several residences with the intent to commit thefts.

- The Newark Search and Theft.  Defendants obtained "consent" from Griselda Vasquez to search a home in Newark, California.  Vasquez and her husband Manny were the subjects of a joint DEA and SFPD narcotics investigation.  Defendants did not inform DEA or SFPD narcotics that they intended to search the home.   Defendants drove to Newark together.  At trial, Vargas described their conversation *en route* as follows:

    Q:   Did the three of you drive down together to Newark?

    A:   Yes.

    Q:   And on the way, did you discuss the possibility of finding cash in the house?

    A:   Yes.

    Q:   Tell the jury about that discussion.

    A:   We were both -- we knew that especially at this point, realizing that Manny was the focus of a very large investigation, that this was the type of dealer that we've rarely came into contact with, especially to be able -- for us to effect arrests on someone of his stature.  And so, the possibility of a large amount of money was definitely on our minds.

    And so we were -- you know, there was anticipation.  We were excited, like wow, this could really be good.  We could really hit a big score here.

RT 1370:3 – 1371:1.

- The Byrd Search and Theft.  After several other incidents had taken place, thus establishing the conspiracy, defendants conducted a random search of registration records at the Sunrise Hotel.  Vargas testified that they located a record for an Andrew Byrd and believed that there was an outstanding Shasta County arrest warrant for Byrd.  There was, in fact, no such warrant.  The three defendants entered Byrd's room without a warrant.  Once inside, Vargas detained Byrd, while Furminger attempted to search Byrd's computer (without a warrant) and Robles rifled through Byrd's belongings (without a warrant), ultimately findings and stealing cash which later he shared with Vargas and Furminger, and other property which he apparently did not share.  RT 1400:7 – 4010:3; 968:8 – 976:23.

- The Self-Storage Search and Theft.  In November 2009, Vargas and Robles identified a heroin dealer who was living in a self-storage unit in the Sunset.  Vargas, Robles, and other officers conducted surveillance, which resulted in arrests of Burgess Crosby and Crystal Ponzer and a search of their residence, which was the self-storage unit.  Vargas found cash, which he left in the storage unit until Furminger arrived on the scene, having been alerted to the search and appearing on his day off to participate in the bounty.  Furminger entered in the storage unit, pocketed the money, and later split it with Vargas and Robles.  RT 1415:16 – 1423:12.

Each of these incidents demonstrates that defendants conducted, as part of a pre-existing conspiracy, illegal warrantless searches for the purpose of locating money and keeping it for themselves.  This conduct easily meets the elements of burglary under California law.

1

**E.  Conclusion**

2

      The Probation Office's offense level calculations – level 28 – for both Furminger and Robles are

3

correct.  The proper Guideline Range is 78 to 97 months.

4

5

                                  Respectfully submitted,

6

7

                                  MELINDA HAAG
United States Attorney

8

Dated:  February 17, 2015

*John H Hemann*

9

                                _____
JOHN H. HEMANN
Assistant United States Attorney

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28