MELINDA HAAG (CABN 132612)
United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

JOHN H. HEMANN (CABN 165823)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    John.Hemann@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) | Case No. CR 14-0102 CRB |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | GOVERNMENT'S SENTENCING MEMORANDUM |
| EDMOND ROBLES, | ) | Sentencing Date: April 18, 2015 |
| Defendant. | ) | Time: 10:00 am |

"He was my people.  Criminal like me."

Cesar Hernandez was testifying about how it had come to pass that he began working with then-Officer Edmond Robles to rob drug dealers of cash and drugs. (Ex. A, RT 541:12 – 562:12)  Hernandez testified that Robles had been pressuring him to become a snitch – that Robles twice had burst into his room in a Mission District SRO and threatened him with false arrest and phony prosecution unless he started working for Robles.  Finally, Hernandez explained, he agreed to do a deal for Robles.

After Hernandez identified a drug dealer and gave Robles sufficient detail to get into the dealer's house, Robles called him and they met on a street near Mission Police Station.  When they met, Robles told him that the raid went well and, unexpectedly, gave Hernandez cash and crystal meth that Robles had stolen during the search of the drug dealer's house. (Ex. B, RT 569:8 – 575:14)  Hernandez had

intended for this to be his one and only deal with Robles, but after considering Robles that night on the street in the Mission, Hernandez changed his mind:

> Q. You walked away from that. And as you were walking away from that meeting with Mr. Robles, when he gave you the cash and the crystal meth, did you intend to do more work with the San Francisco police officers?
>
> A. He called me a couple, like, times and told me we did good and we had to do again. And I have a couple -- I think I talk to him -- I talk to him after that again. I do the first thing because I want him go away.
>
> Q. You wanted him to go away?
>
> A. Yeah, on the first day. Then when he gave me money, he gave me the crystal meth, and when I talked to him I think was -- he was one of my kind, like me.
>
> Q. He was one of your kind?
>
> A. Yeah. Only thing is he had a badge and pistol. He was my people. Criminal like me. Like the guys always hang out, you know. He was the same. The only difference he had pistol and badge. And I don't have no problems to do things later.
>
> Q. So did you change your mind about doing more deals with Mr. Robles?
>
> A. Yes.

(Ex. C, RT 608:17 - 609:12) As the Court knows, Robles did more deals with Hernandez, and more with Reynaldo Vargas and Ian Furminger that did not involve Hernandez.

Ed Robles was a criminal with a pistol and a badge. He was one of Cesar Hernandez's people, but worse. Much worse. He had been entrusted and paid to protect and serve the people of San Francisco. His violation of that trust warrants a sentence at the high end of the sentencing guideline range. The government incorporates the points it made in the sentencing memorandum filed regarding Ian Furminger and will not repeat them here. See Exhibit D. We wish to add two points relevant to defendant Robles.

First, it appears that it was Robles who began the criminal scheme to steal money, property, and drugs from drug dealers; a scheme that Vargas and Furminger quickly joined. The uncontroverted evidence at trial was that the first such theft that took place involving any of the three defendants was

the theft from the house at 22nd and Harrison, which was committed by Robles alone based on information provided by Hernandez. There is no evidence that either Vargas or Furminger engaged in similar conduct, alone or with others, prior to this occurrence. Vargas, who was new to undercover work when the scheme began, testified that it was Robles who brought him into the scheme by slipping money into his pocket during a search. (Ex. E, RT 1251:7-16)

Second, Robles is a person who abuses, or attempts to abuse, his authority without regard to legal or societal norms. Not only are there the events of conviction and the other illegal conduct described in detail by Vargas and Hernandez, but even after his conviction Robles continued to engage in illegal and threatening conduct. After trial, Robles telephoned and violently threatened a man who had dated Robles's girlfriend. (Ex. F) Magistrate Judge Zimmerman revoked Robles's release and confined him to home; Magistrate Judge Beeler later released him from home confinement, but required continuing electronic monitoring. (Dkt. 186 & 201)

This wasn't Robles's only erratic conduct following his indictment in this case. In July 2014, the Walnut Creek police were called by the same girlfriend to her home in Walnut Creek. The girlfriend reported that Robles would not leave her front door after she refused to let him in. He told her that he would continue to ring her doorbell until he woke up her children unless she let him in the house. Robles was confrontational with the police who responded and returned to the house even after the police instructed him to leave. (Ex. G)

For the reasons that the Court sentenced defendant Furminger to the high end of the sentencing guideline range, as well as the additional factors discussed above, Robles is not deserving of any variance from the Guideline range and the Court should impose a sentence at the high end of that range.

DATED: March 12, 2015　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　MELINDA HAAG
　　　　　　　　　　　　　　　　　　　　　United States Attorney

　　　　　　　　　　　　　　　　　　　　　*John H. Hemann*

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　JOHN H. HEMANN
　　　　　　　　　　　　　　　　　　　　　Assistant United States Attorne

GOVT'S SENTENCING MEMO
CR 14-0102 CRB　　　　　　　　　　3